JOHN GRIM et al,

v.

CORNELIUS MURPHY.

*Filed at Mt. Vernon June 13, 1884.*

1. BOUNDARIES—*settled by parol agreement.* The owners of adjoining tracts of land may, by parol agreement, settle and permanently establish a boundary line between their lands, which, when followed by possession according to the line thus agreed upon, is binding and conclusive, not only upon them, but also upon their grantees.

2. LIMITATION—*adverse possession—how it may be shown.* Adverse possession of land under the Limitation law may be shown by inference, from circumstantial evidence. In respect to a disputed boundary line, the fact that the defendant placed his fence twenty feet beyond or outside of

what was generally regarded, and he was told was, the true line, and that he built his house and planted his orchard on the disputed land, are circumstances from which a jury may infer his possession was adverse, and that he claimed to own the land,—and this, too, in the absence of any declarations of such claim of adverse possession. It is not true that adverse possession can be proved only by clear and positive evidence. It may be proved by any legitimate testimony, and by a mere preponderance, like any other issue in a civil suit.

3. SAME—*what regarded as adverse possession.* If the owner of a tract of land, in inclosing the same, builds his fence on one side in doubt as to whether it is on his own land, and declares that if it is not on the true line, when established he will conform to it, the possession outside of the true line, and up to the fence, will not be adverse; but if such party believed his fence was within the true boundary line, and he took possession and occupied it under that belief, his possession would be adverse. Nor would it matter that he made a statement that if it should be established that the fence was not upon the true line before the bar of the statute had run, he would submit and regard the true line under his possession subservient to the true owner.

4. INSTRUCTION—*calling attention to an issue not in the case.* In ejectment to recover a strip of land which had been occupied by the defendant for twenty years, under a claim that it was within the boundaries of his quarter section, in which the twenty years' Limitation law was set up as a defence, the court instructed the jury, for the plaintiff, that if the defendant, by his declarations and acts, admitted that his fence was not a fixed and settled boundary line between the lands in dispute, they should find the Statute of Limitations was no bar. There was no pretense that the defendant ever claimed the fence as the boundary line, but he did claim that the centre of the road along and twenty feet south of his fence was the line between the two tracts: *Held,* that the instruction was erroneous and misleading, as calling the attention of the jury from the real to a fictitious issue.

5. SAME—*assuming facts to be true which are controverted.* An instruction which assumes as true certain statements and admissions of the opposite party which are controverted facts for the jury, and that they were absolute and unconditional, while the evidence clearly tends to prove that if made they were conditional, is highly calculated to mislead the jury, and is erroneous.

6. SAME—*construed, as being contradictory.* In a contest over a strip of land, between adjoining owners, growing out of a dispute as to the true line dividing the two tracts, in which the defendant relied upon the Statute of Limitations, the court, at the instance of the plaintiff, instructed the jury that if the defendant occupied the land up to his fence because he believed it to be the true line, without intending to claim to the fence if it should not be the line, then an element of adverse possession was wanting: *Held,* that the instruction was not accurate, and should not have been given, its language being self-contradictory.

APPEAL from the Circuit Court of Jasper county; the Hon. WILLIAM C. JONES, Judge, presiding.

Mr. JOHN H. HALLEY, and Mr. W. H. McDONALD, for the appellants:

The testimony of the witnesses upon the question of the parol agreement to fix the boundaries, as well as the adverse possession, is not controverted, and we insist that the law is with the appellants on both points. *Cutler* v. *Callison,* 72 Ill. 113; *Kerr* v. *Hitt,* 75 id. 51; *Hubbard* v. *Stearns,* 86 id. 35; *McNamara* v. *Seaton,* 82 id. 498; Tyler's Law of Boundaries, Fences, etc. 254-256.

As to the question of adverse possession under the plea of the Statute of Limitations, see *Huntington* v. *Whaley,* 29 Conn. 391; Tyler's Law of Boundaries, Fences, etc. 335; *Libeau* v. *Bergeson,* 14 La. 489.

We insist that the law is, that original monuments afford the best evidence as to the line run by the government surveyors. *McClintock* v. *Rodgers,* 11 Ill. 279; *Yates* v. *Shaw,* 24 id. 367.

Mr. J. M. HOENY, and Mr. P. A. BRADY, for the appellee:

We insist that the evidence does not establish the agreement respecting the boundary line with that certainty and clearness required by law. The evidence does not bring the case within the rule in *McNamara* v. *Seaton,* 82 Ill. 500.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of ejectment, for the recovery of a strip of ground sixty-three feet and nine inches wide at the west end, and fifty-nine feet wide at the east end. It is claimed to be a part of the north-west quarter of the north-west quarter of section 4, town 8, range 10 east. The controversy grows out of a dispute as to the true line between the land

of Grim and appellee, and as to whether the occupancy of the strip in controversy by Grim for more than twenty years, under an agreement between him and a former owner of appellee's land under the claim of ownership, is a bar to controverting the question as to where the line was really located by the government surveyors.

In the case of *Cutler* v. *Callison,* 72 Ill. 113, it was held that the owners of adjoining tracts of land may, by parol agreement, settle and permanently establish a boundary line between their lands, which, when followed by possession according to the line thus agreed upon, is binding and conclusive, not only upon them, but upon their grantees. It is upon the principle, not that title passes by the parol agreement, but that the extent of the ownership of the land of each has been agreed upon, settled and determined, and that when acted upon, the parties and privies are estopped to question the executed agreement. The same doctrine is announced in the cases of *Crowell* v. *Maughs,* 2 Gilm. 419, *Kerr* v. *Hitt,* 75 Ill. 51, *Hubbard* v. *Stearns,* 86 id. 35, *McNamara* v. *Seaton,* 82 id. 498, *Yates* v. *Shaw,* 24 id. 367, and *Bauer* v. *Gottmanhausen,* 65 id. 499. We, after such repeated and uniform decisions of this court, especially when it has become a rule of property, must regard the doctrine as settled.

It was held in some of these cases, that when the boundary line was thus agreed upon, and possession taken and held for twenty years or more, a recovery was barred by the Statute of Limitations. Here, Black, the agent for the land appellee now owns, testifies that as early as in 1852 he had the land surveyed, and the corners and monuments placed by the government surveyors were found, and the line established by them; that he showed Grim that line, and it was adopted by them as the line; that both tracts were improved by them to conform to that line; that Black first fenced, and Grim afterwards, in 1858 or 1859; that he placed his fence where it now stands; that he set his orchard and built his house

on the land now claimed by appellee, and Grim has had it in actual occupancy ever since, more than twenty years before this suit was brought. Grim testified to substantially the same as Black,—nor do we find that this evidence is contradicted by any witness testifying in the case. But it is attempted to break the force of this evidence by proof of admissions made by Grim. There are witnesses who testify, (and appellee of that number,) that Grim, within the twenty years, had proposed to buy the strip in controversy, or stated he would purchase it if the line was established different from his claim. Appellee first stated that Grim proposed to purchase, but on cross-examination he says Grim only proposed to purchase in case the line was established otherwise than he claimed, and adverse to him. There is no evidence that he ever, after the expiration of his twenty years' possession, unconditionally proposed to or said he would buy. Grim testified that he had no recollection of such an offer, but may have said he would purchase to avoid suit. There are a number of witnesses who testify that the line was always regarded by the neighbors as being twenty feet south of Grim's fence, and they all fenced their lands to conform to it as the line. It appears that several recent surveys were made, all running from one to four rods north of what had been regarded previously as the line. It appears that no two of these later surveys correspond, but vary from one to three rods from each other.

Under this evidence it was essential that the jury should have been accurately instructed, which was not done. The third of plaintiff's instructions is manifestly incorrect as a legal proposition. It is this:

"That adverse possession sufficient to defeat a legal title, when defendants have no paper title, can not be made out by inference, but must be established by clear and positive proof, and the possession must be continuous and uninter-

rupted for twenty years, and must be such as to show clearly that the defendant claims the land as his own, openly and exclusively; and unless the proof clearly shows this fact, the verdict should be for the plaintiff, on the issue of limitation."

This instruction excludes all inferences from circumstantial evidence. Proof by that character of evidence is always by inference. The fact that Grim placed his fence twenty feet north of what was generally regarded, and he was told by Black was, the true line, and that he built his house and planted his orchard on the land in dispute, were circumstances from which a jury might infer his possession was adverse, and he claimed to own the land,—and this, too, in the absence of all declarations of such claim of adverse possession. This instruction no doubt misled the jury, as it excluded all the circumstances tending to establish adverse possession. And it is vicious in another respect. It is not the law that adverse possession can be proved only by clear and positive evidence, as it may be proved by any legitimate testimony. That fact may be proved by a mere preponderance, like any other issue. This instruction was fatally erroneous, and should not have been given.

We fail to find any evidence on which to base the fourth of plaintiff's instructions. It informs the jury that if Grim, by his declarations and acts, admitted within twenty years that the fence was not a fixed and settled boundary line between the lands in dispute, the jury should not find the statute was a bar to the action. This was highly calculated to mislead the jury. There seems to be no pretense that Grim ever claimed the fence as the boundary line, but he did claim that the centre of the road, twenty feet south of the fence, was the boundary line between the tracts. This instruction turned the whole question of the Statute of Limitations on a question not then or ever before made by Grim. The giving this instruction misled the jury from the real to

a mere fictitious issue. Grim may have innumerable times said the fence was not the boundary line, and yet be permitted to show that it was south of the fence, as he claimed. This instruction was manifestly erroneous.

The fifth instruction of the series is not accurate, and should not have been given as framed. It asserts that if the defendant occupied the land up to the fence because he believed it to be the true line, without intention to claim to the fence if it should not be the line, then an element of adverse possession is wanting. This language seems to be self-contradictory. If he took possession and improved to the fence, believing it to be within the line, he manifestly claimed to the fence. He evidently, under such circumstances, claimed to the fence, without asserting the claim in words. Such a claim, accompanied by possession for twenty years, would be adverse, and bar a recovery. If, however, he built the fence in doubt as to whether it was on his own land, and declared that if it was not the true line, when it should be established he would conform to it, then the possession would not be adverse; but if he believed the fence was within the boundary of the true line, and took possession, improved and occupied it under that belief, then the possession would be adverse. Nor would his statement that if it should be established that it was not the true line before the period of the bar of the statute had run, he would submit to and regard the new line as the true one, render his possession subservient to the true owner. He would, by such declarations, only indicate an intention to obey and not resist the law. Such declarations, without in some manner recognizing the claim of the true owner, would not stop the running of the statute. There is no evidence in the record that he ever recognized the title appellee holds as extending into his inclosure. In all his conversations about purchasing this strip, his statement was conditional that the line proved to be different from what he claimed. He, so far as the

record discloses, never admitted the line was at any other place than in the centre of the public road.

The seventh of plaintiff's instructions is erroneous. It is this:

"The court instructs the jury, that if they believe, from the evidence, that within the last twenty years the defendant Grim, one of the defendants, while he was the sole owner of the land in controversy, offered to buy said land, that is a circumstance, if unexplained, to show that he did not claim the land adversely to the plaintiff; and his repeated acts or statements to other persons, of the same nature, within the last twenty years, are proper to be considered in arriving at a verdict on the plea of limitation."

This instruction assumes as true that Grim had repeatedly stated, or by his acts admitted, the centre of the road was not the true line. This was a controverted fact, for the consideration of the jury. The instruction not only assumes such admissions were made, but were absolute and unconditional. The evidence clearly tends to prove that if made, the offer was conditional. It was highly calculated to mislead the jury, and should not have been given.

The evidence tended strongly to establish the defence, and the finding would probably have been the other way had the jury been fairly instructed. We are not satisfied with the verdict, and think the case should be submitted to another jury, under proper instructions.

The judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*