28   485
32   436
28   485
34   105

## WILLAMETTE   REAL   ESTATE   COMPANY *v.* HENDRIX.

[42 Pac. 514.]

1. EXECUTION — COURTS.— In the absence of a statutory provision authorizing an execution to be issued out of the circuit court upon a judgment rendered in the county court, the writ cannot be so issued, and such writ is an absolute nullity.

2. SHERIFF'S DEED AS EVIDENCE — RECITALS.— The recitals in a sheriff's deed of land sold under execution are *prima facie* evidence of the matters recited.

3. VOID JUDGMENT — PUBLICATION OF SUMMONS.— A judgment against a nonresident on service of summons by publication is void, where the record fails to show that the court, prior to the publication, obtained jurisdiction of his property by attachment process.*

4. EXTENT TO WHICH A CONFIRMATION CURES INFIRMITIES.— The infirmity of a judgment for want of jurisdiction of the court to render it is not cured by the court's approval of a sheriff's deed of premises sold on an execution thereunder, as a confirmation of an execution sale of real property does not supply defects founded in a want of jurisdiction.

5. ADVERSE POSSESSION.— Claim of ownership of premises, in the absence of occupancy, can never become the foundation of an adverse right.

6. CONSTRUCTIVE POSSESSION.— Entry and occupancy of one of several known lots or tracts conveyed by the same instrument is not constructively an occupancy of all, for the purpose of adverse possession: *Hicklin* v. *McClear,* 18 Or. 126, cited and approved.

*The validity of personal judgments rendered upon constructive service of process is the subject of an extensive note to *Moyer* v. *Bucks* (Ind.), 16 L. R. A. 231.—REPORTER.

APPEAL from Washington: T. A. McBRIDE, Judge.

This is a suit by the Willamette Real Estate Company against H. H. Hendrix to quiet the title to lots three, four, five, six, seven, eight, nine, and ten in block twenty-five; lots six, seven, eight, nine, and ten in block twenty-six; blocks thirty-five, thirty-six, and four blocks known as the Courthouse Square, in the town of Cornelius, Oregon. The facts are that on June seventh, eighteen hundred and sixty, the defendant was the owner in fee simple of the following described premises, to wit: "Beginning at a point thirteen and twelve hundredths chains east of the northwest corner of B. Q. Tucker's land claim, in Washington County, Oregon; running thence south forty-five and seventy-five hundredths chains to the base line; thence east thirty chains; thence north forty-five and seventy-five hundredths chains; thence west thirty and sixty hundredths chains to the place of beginning, containing one hundred and forty acres." On the third day of July, eighteen hundred and sixty, the County Court of Washington County, Oregon, rendered judgment in favor of one W. T. Newby against the said defendant, upon his confession, in words and figures as follows, to wit: "In the County Court of the State of Oregon for Washington County. W. T. Newby *versus* H. H. Hendrix—Confession of Judgment. I, H. H. Hendrix, the defendant above named, hereby confess myself indebted to W. T. Newby of Yamhill County, Oregon, in the sum of three hundred and ten dollars, due upon a written contract for the payment of money only. And I hereby further state that the said sum of three hundred and ten dollars is justly due said plaintiff. And I authorize judgment to be entered against me for said sum of three hundred

and ten dollars. (Signed) H. H. Hendrix. Dated the seventh day of June, A. D. one thousand eight hundred and sixty. Witnesses: W. D. Hare, Wm. Brown. State of Oregon, County of Washington, *ss.* H. H. Hendrix being duly affirmed, deposes and says that the foregoing confession of judgment is true and correct, and made by him. (Signed) H. H. Hendrix. Subscribed and sworn to before me this seventh day of June, eighteen hundred and sixty. W. D. Hare, Clerk of the County Court." On October twenty-third, eighteen hundred and sixty-one, by consideration of the circuit court of said county, one S. M. Gilmore obtained a judgment against said H. H. Hendrix for eight hundred and ninety dollars and fifty-three cents, in his absence, the service of the summons having been made by publication. On March eighteenth, eighteen hundred and sixty-two, an execution was issued upon the Newby judgment, which recited that: "Whereas on the seventh day of June, eighteen hundred and sixty, by consideration of a confession of judgment in the Circuit Court of the County of Washington in the State of Oregon, W. T. Newby, plaintiff, recovered judgment against H. H. Hendrix, defendant, for the sum of three hundred and sixteen dollars damages and costs, which judgment was enrolled and docketed in the clerk's office of said court on the seventh day of July, eighteen hundred and sixty," and commanded the sheriff of said county to satisfy the same out of the personal property of the defendant, or, if sufficient could not be found, then out of the real property belonging to him in that county. On the same day an execution was also issued on the Gilmore judgment.

The sheriff levied on the real property above described, and other lands of the defendant, under both

writs, and made the following return on the first execution: "Served the within execution by levying upon the following described real estate (for the want of personal property) to wit: Lying and being in the County of Washington, Oregon, and described as follows" (here follows the description of the one hundred and forty-acre tract as above given, and also the description of another tract known as the H. H. Hendrix Donation Land Claim). "And after duly advertising the same as required by law, as the annexed notice will show, for sale to the highest bidder, for cash, on the premises, on Tuesday, the twenty-second day of April, A. D. one thousand eight hundred and sixty-two, on which day I proceeded to offer said premises as follows, to wit: The first described piece, and sold the same to Mrs. Adelia Snelling for the sum of three hundred dollars, she being the highest bidder therefor. I then proceeded to offer the second described piece, and sold the same to Mrs. Adelia Snelling for the sum of one hundred dollars, she being the highest bidder therefor,— being the sum of four hundred dollars for the whole of said lands; the interest sold being the entire interest of said H. H. Hendrix in and to the same. And I disposed of said proceeds of said sale as follows: Paid to W. T. Newby the sum of two hundred and eighty-three dollars and seventy-five cents ($283.75), being the principal and interest of this execution; paid W. D. Hare, clerk, four dollars and seventy-one cents, clerk's fees; paid sheriff's fees, original costs, seventeen dollars and ten cents; county fee, three dollars; paid accruing costs, thirty dollars and fifty-five cents; leaving in my hands the sum of sixty-three dollars and eighty-five cents to apply on an execution in my hands, issued out of the circuit court in favor of W. T. Newby, assignee of S. M. Gilmore *versus*

H. H. Hendrix, to pay the costs of the same,—leaving the sum of forty-five dollars and ninety-two cents due on this execution April twenty-second, eighteen hundred and sixty-two. (Signed) R. E. Wiley, Sheriff of Washington County." Said officer indorsed on the second execution the following return: "Served this execution by applying thereon the sum of sixty-three dollars and eighty-five cents, proceeds of the sale of lands, on an execution in favor of W. T. Newby *versus* H. H. Hendrix, upon which this execution was levied by order of plaintiff, and the land advertised. I disposed of the said sums as follows, to wit: Paid clerk's fees, four dollars and sixty-five cents; sheriff's original, seven dollars and sixty-five cents; county, five dollars; advertising, sixteen dollars; paid accruing costs, thirty dollars and fifty cents. (Signed) R. E. Wiley, Sheriff of Washington County." On October twelfth, eighteen hundred and sixty-three, the sheriff executed to the said purchaser, Adelia Snelling, a deed, wherein he recited that the premises therein described had been levied on and sold to her in pursuance of an execution issued out of the circuit court in the case of *Gilmore* v. *Hendrix,* and by virtue of an execution issued out of the county court in the case *Newby* v. *Hendrix.* The following indorsement appears on said deed: "State of Oregon, County of Washington, *ss.* No irregularity in the proceedings concerning the sale within recited appearing, this deed is approved in open court this thirteenth day of October, A. D. one thousand eight hundred and sixty-three. Erasmus D. Shattuck, Judge of the Circuit Court."

Adelia Snelling having died intestate, one Wheelock Simmons was appointed administrator of her estate, who, on July fifteenth, eighteen hundred and sixty-six, in pursuance of an administrator's sale of

the decedant's real property, executed to one Stephen Sell a deed to the premises so purchased from the sheriff. On April seventeenth, eighteen hundred and seventy-one, Sell and wife by deed conveyed the same premises to one William L. Halsey, who established and platted the townsite of Cornelius thereon, and, having dedicated the streets to the public, on September twenty-second of that year filed a plat thereof for record. On December fifth, eighteen hundred and seventy-two, Halsey and wife by deed conveyed the lots and blocks first above described, together with other lots and blocks in the town of Cornelius, to the plaintiff, who immediately removed the fences which inclosed the premises so platted into lots and blocks. In December, eighteen hundred and ninety-one, the defendant commenced to inclose the land in controversy, and, refusing to desist when so ordered, this suit was instituted. The plaintiff alleges in its complaint that it is the owner in fee and in the possession of the premises, and that it had been in the continued adverse possession thereof for a period of more than ten years prior to the commencement of the suit, and prays that the defendant be required to set forth any title that he may claim therein; that he be decreed to have no title to said premises, and that plaintiff has a valid title thereto. The defendant, after denying the material allegations of the complaint, alleges that he is the owner and in possession of the premises, and sets out the source and muniments of his title; that the plaintiff is asserting some title thereto, but that its conveyances and claim based thereon constitute a cloud on his title which he prays may be removed. The reply having put in issue the allegations of new matter contained in the answer, the case was referred to C. E. Runyon, who took and reported the evidence,

from which the court below found that the equities were with the defendant, and, having rendered a decree as prayed for in the answer, the plaintiff appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Albert H. Tanner.*

For respondent there were briefs and oral arguments by *Messrs. Thomas H. Tongue* and *S. B. Huston.*

Opinion by MR. JUSTICE MOORE.

1.   It is contended by plaintiff that the county court, being a court of record, and invested with civil jurisdiction to be defined, limited and regulated by law, not exceeding the amount of five hundred dollars, (Constitution of Oregon, Article VII, §§ 1, 12,) was further invested by an act of the legislative assembly, approved June fourth, eighteen hundred and fifty-nine, (Laws, 1859, p. 9,) with authority to enter on the defendant's confession a judgment which should not be subject to review in a collateral suit.   Conceding without deciding that the county court had such authority, we will examine the foundation of plaintiff's alleged title, namely, the judgment, execution, sale, and deed : *McRae* v. *Daviner,* 8 Or. 63; *Faull* v. *Cooke,* 19 Or. 455 (20 Am. St. Rep. 836, 26 Pac. 662); *Cloud* v. *El Dorado County,* 12 Cal. 128 (73 Am. Dec. 526); *Clark* v. *Lockwood,* 21 Cal. 220; *Blood* v. *Light,* 38 Cal. 649 (99 Am. Dec. 441).   The sheriff's return shows that the real property was sold upon an execution issued out of the circuit court on a judgment by confession rendered in the county court. Every court has the inherent right to control its own process, and, unless authorized by law, no other court can interfere with such right: *Harris* v. *Cornell,* 80 Ill.

54. There being no statutory provision authorizing the clerk of the circuit court to issue an execution out of that court upon a judgment rendered in the county court, the writ so issued must be regarded as an absolute nullity:' 1 Freeman on Executions, § 15; *Chandler v. Colcord,* 1 Okl. 260 (32 Pac. 330).

2. The defendant insists that, the Gilmore judgment having been rendered in the circuit court on a service of summons by publication, no jurisdiction of the person was obtained, and, the record introduced in evidence failing to show that the land had been attached so as to render a judgment given in the action *quasi in rem,* no jurisdiction of the subject matter was acquired, and hence the judgment is void; while the plaintiff contends that the court rendering the judgment being one of general jurisdiction, and the record being silent, it must be presumed from the judgment that the court complied with every statutory requirement, and thereby obtained jurisdiction. The sheriff's return indorsed on the execution issued on this judgment discloses that the property was levied upon by virtue thereof, and advertised for sale; but it does not show that any sale was made in obedience to its commands. "While," says BALDWIN, J., in *Cloud* v. *El Dorado County,* 12 Cal. 128, (73 Am. Dec. 526,) "it is undoubtedly the duty of the sheriff to make this return, and while it is important as evidence of a permanent and authentic character that he should do so, the title of the purchaser does not depend upon his performance of this duty. The purchaser has no control over the conduct of the officer in this respect; nor is it just or reasonable that he should be responsible for the remissness or negligence of the sheriff in the discharge of such an office." This doctrine was

affirmed in *Clark* v. *Lockwood,* 21 Cal. 220; *Blood* v. *Light,* 38 Cal. 649, (99 Am. Dec. 441,) and lastly in *Frink* v. *Roe,* 70 Cal. 296 (11 Pac. 820). If the necessary preceding steps have all been properly taken, a sheriff's deed is evidence of title in the grantee, and the recitals therein are *prima facie* evidence of the facts recited: *Dolph* v. *Barney,* 5 Or. 191. "A sale," says Mr. Freeman in his work on Executions, volume 2, § 325, "may be made under several writs. Some of these writs may be valid, and the others void. If either of the writs under which a sale is made is valid, the officer has the power to sell, and consequently the power to convey. If in his deed he recites several writs, some of which are valid and some void, the recital of the void writs may be treated as surplusage, and the deed, being supported by the valid writ, and the power to sell and convey thereby conferred, is as effective as if all the writs were unobjectionable."

3. The sheriff's deed being *prima facie* evidence of title in plaintiff's grantors, the question is presented whether the judgment rendered in the case of *Gilmore* v. *Hendrix,* upon which the deed must rest for its foundation, is valid, or at least not vulnerable to collateral attack. The judgment in this case is as follows: "S. M. Gilmore *versus* H. H. Hendrix. And now on this day comes the plaintiff, by M. McBride, his attorney, and the said plaintiff files affidavit of publication of notice of the pendency of this suit, to wit (here insert), in accordance with the order of this court made at the May term thereof, eighteen hundred and sixty-one; and said defendant, being called, comes not, but makes default. It is therefore ordered by the court that the default of the defendant be entered. And it appearing to the court that this suit is founded upon

a promissory note for the payment of money only, and that there is now due and owing from the said defendant thereon to the said plaintiff the sum of eight hundred and ninety dollars and fifty-three cents; it is therefore considered and adjudged by the court that the plaintiff have and recover off and from said defendant the sum of eight hundred and ninety dollars and fifty-three cents, together with his costs to be taxed, and that he have execution therefor." It appears from this record that the defendant was a nonresident of the state, and, not appearing or answering, the court acquired no jurisdiction to render a judgment *in personam* on the service of a summons by publication; and hence the authority to render the judgment, so as to become *quasi in rem*, must depend on the court's having obtained jurisdiction of the defendant's property by some legal process, before any order could be made authorizing the service of a summons by publication: *Pennoyer* v. *Neff*, 95 U. S. 714; *Goodale* v. *Coffee*, 24 Or. 346 (33 Pac. 990). The statute in force at the time of the rendition of the judgment contained ample provisions for and prescribed the mode of attaching the defendant's property to satisfy any judgment which might be rendered against it: Statute 1855, § 119, *et seq.* It will be observed that the judgment contains no recital of the defendant's property being attached, and no other evidence thereof having been introduced, can it be presumed that the court obtained jurisdiction of the subject matter? "The jurisdiction," says Mr. Freeman in his work on Judgments, volume 1, § 123, "exercised by courts of record is, in many cases, dependent upon special statutes conferring an authority in derogation of the common law, and specifying the manner in which such authority shall be employed. The decided preponderance of adjudged

cases upon the subject establishes the rule that judgments arising from the exercise of this jurisdiction are to be regarded in no other light, and supported by no other presumptions, than judgments pronounced in courts not of record. The particular state of facts necessary to confer jurisdiction will not be presumed; and if such facts do not appear, the judgment will be treated as void." It is needless to cite further authority in support of this proposition, for the rule has been already settled in this court that whenever a mode of acquiring jurisdiction, not in accordance with the general course of the common law, has been prescribed by statutes, that mode must be strictly followed, and the authority for rendering the judgment in pursuance thereof must affirmatively appear on the face of the record: *Northcut* v. *Lemery,* 8 Or. 316; *Odell* v. *Campbell,* 9 Or. 298. From the failure to prove that the defendant's property had been attached it follows that jurisdiction of the subject matter was not acquired, and the judgment rendered in the case of *Gilmore* v. *Hendrix* is consequently void.

4. The deed recites that the premises were sold on execution issued from the county court, and this, under the authority heretofore cited, is *prima facie* evidence of the fact, but such recital could not prevail here, in the face of a copy of the execution in evidence from which it appears that the writ purports to have been issued from the circuit court. Nor could the court's approval of the sheriff's deed cure the infirmities of the judgment, for a confirmation of an execution sale of real property is a determination of the regularity of the proceedings under the writ only, and supplies all defects except those founded in a want of

jurisdiction: Rorer on Judicial Sales, § 123; *Leinenweber* v. *Brown,* 24 Or. 548 (34 Pac. 475).

5. It is contended that the plaintiff and its predecessors in interest had been in the adverse possession of the premises in controversy, under a claim of ownership, for a period of more than ten years immediately preceding the commencement of this suit, and that, the statute of limitations having run in its favor, the defendant's right of entry was barred. The evidence shows that the one hundred and forty acre tract was inclosed at the time the sheriff's deed was executed, October twelfth, eighteen hundred and sixty-three, and that a portion of the land was cultivated from that time until the plaintiff received its deed, December fifth, eighteen hundred and seventy-two, and removed the fence from that part of the tract embraced in the townsite of Cornelius; that from eighteen hundred and seventy-two to the commencement of this suit the premises in controversy remained open and uninclosed, during which time there was no visible evidence of any claim of ownership on the part of any one; but that the plaintiff appointed persons living at Cornelius to act as its agent, paid the taxes annually assessed on the property most of the time, and sold and conveyed other lots to persons who in some instances erected buildings thereon. From this evidence it is clear that no adverse title had been acquired by plaintiff's predecessors at the time it received its deed. "The legal title," says THAYER, J., in *Swift* v. *Mulkey,* 14 Or. 64 (12 Pac. 76), "draws after it the possession, and a right of entry is not barred, unless there has been a disseisin followed by an actual, open, notorious, and continuous adverse possession for the period of ten years next prior to the

commencement of the action. To be an adverse pos-
session it must be an occupancy under a claim of
ownership, though it need not be under color of title."
Adverse possession depends upon the intent of the
occupant to claim and hold real property in opposition
to all the world, and this intent is to be inferred from
proof of the occupancy: *Rowland* v. *Williams,* 23 Or. 515
(32 Pac. 402). It must be admitted that the plaintiff
claimed title to the *locus in quo;* but, never having oc-
cupied any portion of the premises, its claim of
ownership, in the absence of occupancy, can never
become the foundation of an adverse right. In *Curtis*
v. *La Grande Water Company,* 20 Or. 34 (10 L. R. A. 484,
25 Pac. 373), LORD, J., in commenting upon the char-
acter of such occupancy, says: "To effect that result,
the possession taken must be open, hostile, and con-
tinuous; 'he must unfurl his flag on the land, and keep
it flying, so that the owner may see, if he will, that
an enemy has invaded his domains, and planted the
standard of conquest.'" Tested by this rule there is
nothing to show that the plaintiff ever did anything
on the land to notify the defendant that it had invaded
the premises in dispute.

6. True, the deed of Halsey and wife described
the property as lots and blocks in the town of Cor-
nelius, but adverse possession of it cannot be predi-
cated upon the occupancy of some lot therein by a
grantee of the plaintiff. When the premises consist
of several known lots or tracts, and are conveyed by
the same instrument, each is distinct, and an entry
and occupancy of one under color of title is not con-
structively an occupancy of all: *Wilson* v. *McEwan,* 7 Or.
87; *Hicklin* v. *McClear,* 18 Or. 126 (22 Pac. 1057); *Stewart*

28 OR.—35.

v. *Harris,* 9 Humph. 714; *Bailey* v. *Carleton,* 12 N. H. 9 (37 Am. Dec. 190); *Denham* v. *Holeman,* 26 Ga. 182 (71 Am. Dec. 198); *Carson* v. *Burnett,* 1 Div. and Bat. L. 546 (30 Am. Dec. 143). Plaintiff not having acquired any title by its deed, and there being no evidence of its occupancy of the premises, it follows that the decree must be affirmed.        AFFIRMED.

Argued December 2, 1895; decided January 27, 1896; rehearing denied.