## RENNERT v. SHIRK ET AL.

[No. 20,426. Filed November 29, 1904.]

QUIETING TITLE.—*Complaint.*—Where a cross-complaint alleges that the cross-defendant is claiming some right, title, or interest in such real estate, adverse to cross-complainants, but which is unfounded, without right, and a cloud upon cross-complainants' title, and that cross-complainants have for the past sixty years been in the open, notorious, continuous and adverse possession of such real estate, such cross-complaint is sufficient, since by statute (§1082 Burns 1901) the pleading to be sufficient must show that the complaining party is the owner and that the defendant claims an interest, and such claim is adverse to the plaintiff, or that such claim is unfounded or a cloud upon plaintiff's title. *p. 544.*

PLEADING.—*Sufficiency of Complaint on One Theory.—Insufficiency Upon Another.*—Where a cross-complaint is good on one theory, although insufficient on another, it is sufficient as against a demurrer. *p. 545.*

ADVERSE POSSESSION.—*Elements of.*—Adverse possession consists in the actual, open, notorious, exclusive and continuous possession of lands under a claim of right. *p. 545.*

SAME.—*"Claim of Right."—How Proved.*—To prove a "claim of right," oral declarations are not necessary. It may be inferred from the manner of occupancy and positive acts. of ownership inconsistent with the ownership of the true owner, and from erecting, repairing, occupying or leasing buildings thereon, and from offering to sell and convey. *pp. 546, 547.*

SAME.—*Burden of Proof.*—When the plaintiff shows that he has been in the possession of property for the period of twenty years, apparently as owner, the presumption is that such occupancy was under a claim of right, and it is necessary for defendant to go forward with the proof to show that such occupancy was not under a claim of right. *p. 549.*

SAME.—*Occupancy by Mistake of True Line.*—An occupant who by mistake takes actual, visible and exclusive possession of another's lands by mistake and holds the same for twenty years as his own, acquires a title in fee simple. *p. 551.*

SAME.—*Admission of Occupant.*—Where the evidence showed that cross-complainants and their grantors had held possession, apparently as owners of lands since 1840, and that one of such grantors between 1874 and 1880 said to a witness that he did not claim such real estate, such statement could not operate to defeat such person's title, since the prescriptive period had already run prior to the making of such statement and the title thereto had vested. *p. 553.*

SAME.—*"Exclusive" Possession.—Evidence.*—Where the evidence showed that cross-complainants and their grantors had held possession of the real estate in question, apparently as owners, for over forty years, and the paper title owner built a house with the eaves projecting over the land so held by prescription, this did not defeat such title by prescription, for it had ripened into title prior thereto, the projection having been made less than twenty years before the action was brought. *p. 554.*

From Miami Circuit Court; *Joseph N. Tillett,* Judge.

Action by Mary H. Rennert against Milton Shirk, Elbert H. Shirk and Alice S. Edwards to quiet title. The defendants filed a cross-complaint to quiet title. From a judgment for cross-complainants quieting their title, the plaintiff appeals. Transferred from the Appellate Court under § 1337u Burns 1901. *Affirmed.*

*J. T. Armitage* and *W. E. Mowbray,* for appellant.

*John Mitchell, W. B. McClintic* and *N. N. Antrim,* for appellees.

MONKS, J.—Appellant brought this action against appellees to quiet the title to lot No. 82 in the original plat of the city of Peru. Appellees, Milton and Elbert H. Shirk and Alice S. Edwards, filed a cross-complaint to quiet title in themselves to a part of said lot No. 82. Appellant's demurrer for want of facts to said cross-complaint was overruled. A trial of said cause resulted in a finding, and, over a motion for a new trial, a judgment in favor of the cross-complainants, quieting their title to the part of lot No. 82 described therein.

The errors assigned and not waived call in question the action of the court in overruling appellant's demurrer to the cross-complaint, and appellant's motion for a new trial.

It is alleged in the cross-complaint that cross-complainants are the owners in fee simple of the following real estate in Miami county, in the State of Indiana (describing the part of said lot No. 82 in controversy) ; "that said cross-defendant Mary H. Rennert is claiming some right, title, or interest in and to said real estate adverse to the interest of said cross-complainants, the nature of which is to them unknown, but which is unfounded and without right, and casts a cloud upon their title thereto. Cross-complainants further say that for more than twenty years, to wit, for sixty years, last past, they and their immediate and remote grantors have been in the open, notorious, continuous, and adverse possession of said real estate as against cross-defendant Mary H. Rennert, and all the world, claiming title thereto."

Appellant insists that said cross-complaint is insufficient, "because it is not alleged in terms, or the equivalent thereof, that the possession of the cross-complainants and those under whom they claim title was actual and exclusive; that the allegation that the possession was adverse is a mere conclusion, and not the statement of a fact."

In an action to quiet title, under our statutes (§1082 Burns 1901), the pleading, to be sufficient, must allege that

the pleader is the owner of the real estate described therein, or a certain interest therein, and that the defendant in the action or cross-action claims an interest therein, and that such claim is adverse to the title asserted in said pleading, or that the same is unfounded and a cloud upon such title. *Weaver* v. *Apple* (1897), 147 Ind. 304, 305; *Rausch* v. *Trustees, etc.* (1886), 107 Ind. 1, 3, and cases cited; *Johnson* v. *Taylor* (1886), 106 Ind. 89, 90-92, and cases cited; *Mitchell* v. *Bain* (1895), 142 Ind. 604, 606, 607; *Brown* v. *Cox* (1902), 158 Ind. 364-366, and cases cited; *Seymour Water Co.* v. *City of Seymour* (1904), *ante,* 120. All these essential facts were alleged in the cross-complaint, and it is therefore sufficient.

It is not necessary to decide whether or not the allegations in said cross-complaint concerning the possession are sufficient to give title by prescription, for the reason that said pleading is good without considering said allegations; and, even if they are not sufficient to give title, they do not in any way overcome or destroy the other allegations thereof.

The motion for a new trial assigned two causes therefor: (1) The insufficiency of the evidence to sustain the finding; (2) that the finding is contrary to law.

The finding in favor of the cross-complainants and against appellant, was made upon the ground that said cross-complainants held title to the real estate in controversy by adverse possession. To be adverse, possession must be actual, open, notorious, exclusive, continuous, and under a claim of right; that is, an intention to claim adversely. *Worthley* v. *Burbanks* (1897), 146 Ind. 534, 539.

Appellant insists that appellees failed to show title by adverse possession, because there was no evidence that their possession and the possession of those under whom they hold and claim the part of lot No. 82 in controversy was

"under a claim of right." We may therefore assume that the evidence established all the other essential elements of title by prescription, and proceed to consider the question mentioned.

Evidence was given in the cause showing that lots No. 81 and No. 82 in the original plat of the city of Peru are adjacent to each other, lot No. 82 being west of lot No. 81. Prior to 1842 the owner of lot No. 81 built a frame dwelling-house on the west side of said lot, which extended twenty-six inches over and upon said lot No. 82, where it remained until the time of the trial of this cause in 1903. The part of lot No. 82 occupied by said dwelling-house was a strip twenty-six inches wide, commencing at the north or front end of said lot No. 82 on the east side thereof, and extending back from the street south thirty-eight feet, the real estate claimed in the cross-complaint. The owners of said lot No. 81, either in person or by their tenants, have lived in said dwelling-house and had actual, exclusive, and continuous possession of the real estate in controversy from the time said house was built, for a period of more than forty years; and have during that period, and until the time of the commencement of this action in 1902, repaired said property, rented it, collected the rents, offered to sell and convey, and have sold and conveyed the same by the description of lot No. 81, and exercised acts of ownership in regard to the same, disregarding the claims of others, asking permission from no one, and using the property as a part of said lot No. 81 and as their own. This sufficiently shows that the possession of the part of lot No. 82 in controversy was under a claim of right.

It is not necessary that appellees and those through whom they claim, or any of them, should have ever made oral declaration of such "claim of right." It may be inferred from the manner of the occupancy. The same, as well as all the other essential elements of adverse possession,

may be shown by positive acts of ownership, inconsistent with the title and possession of the true owner of the real estate in controversy, such as erecting, repairing, and occupying buildings on said real estate, leasing the same, and collecting the rents, selling and conveying, and offering to sell and convey, said property as improved.  1 Am. and Eng. Ency. Law (2d ed.), 888-890; 1 Cyc. Law and Proc., 998-1000; Pingrey, Real Property, §§1163, 1164; Tiedeman, Real Property (2d ed.), §§697, 699; Washburn, Real Property (6th ed.), §§1966, 1976; Kerr, Real Property, §2273; Tiffany, Real Property, §441; 7 Ballard, Law of Real Property, 18-20; 8 Ballard, Law of Real Property, 23, 24; Wood, Limitations (3d ed.), 577; Angell, Limitations (6th ed.), 400, 401; Sedgwick & Wait, Trial of Title to Land (2d ed.), §758; *Watson* v. *Gregg* (1840), 10 Watts (Pa.) 289, 295, 36 Am. Dec. 176; *Rung* v. *Shoneberger* (1833), 2 Watts (Pa.) 23, 27, 26 Am. Dec. 95; *French* v. *Pearce,* (1831), 8 Conn. 439, 21 Am. Dec. 680; *Bryan* v. *Atwater* (1811), 5 Day (Conn.) 181, 5 Am. Dec. 136; *Kennebeck Purchase* v. *Laboree* (1823), 2 Greenl. (Me.) 275, 11 Am. Dec. 79; *Allen* v. *Allen* (1883), 58 Wis. 202, 206-209, 16 N. W. 610; *Meyer* v. *Hope* (1898), 101 Wis. 123, 125-130, 77 N. W. 720; *Bishop* v. *Bleyer* (1900), 105 Wis. 330, 332, 333, 81 N. W. 413; *Pitman* v. *Hill* (1903), 117 Wis. 318, 322, 323, 94 N. W. 40; *Gilman* v. *Brown* (1902), 115 Wis. 1, 5, 6, 91 N. W. 227; *Bennet* v. *Clemence* (1863), 6 Allen (Mass.) 10, 18, 19; *Stedman* v. *Smith* (1857), 8 El. & Bl. 1; *Village of Glencoe* v. *Wadsworth* (1892), 48 Minn. 402, 51 N. W. 377; *Dean* v. *Goddard* (1893), 55 Minn. 290, 297-299, 56 N. W. 1060; *Rowland* v. *Williams* (1893), 23 Ore. 515, 521, 522; *Willamette Real Estate Co.* v. *Hendrix* (1895), 28 Ore. 485, 497, 42 Pac. 514, 52 Am. St. 800; *Liddon* v. *Hodnett* (1886), 22 Fla. 442, 466; *Grim* v. *Murphy* (1884), 110 Ill. 271; *Dyer* v. *Eldridge* (1894), 136 Ind.

654, 658-660, and cases cited; *Brown* v. *Anderson* (1883),. 90 Ind. 93, 98, 99; *Nowlin* v. *Whipple* (1889), 120 Ind. 596, 598, 6 L. R. A. 159, and cases cited; *Mitchell* v. *Bain* (1895), 142 Ind. 604, 607, 608, and cases cited; *Pittsburgh, etc., R. Co.* v. *Stickley* (1900), 155 Ind. 312; *Cutsinger* v. *Ballard* (1888), 115 Ind. 93, 97, and cases cited.

It is said in *Dyer* v. *Eldridge, supra,* at page 659: "Exercising that dominion over the thing used, taking that use and profit it is capable of yielding in its present condition, such acts being so repeated as to show that they are done in the character of owner, and not of an occasional trespasser, constitute adverse possession. *Baum* v. *Currituck, etc., Club* [1887], 96 N. C. 310, 2 S. E. 673. * * * The correct doctrine is declared in *La Frombois* v. *Jackson* [1826], 8 Cowen 589, as follows: 'The actual possession and improvement of the premises, as owners are accustomed to possess and improve their estate, without any payment of rent, or recognition of a title in another, or disavowal of a title in himself, will, in the absence of all other evidence, be sufficient to raise a presumption of his entry and holding as absolute owner; and unless rebutted by other evidence, will establish the fact of claim of title.' The court further said: 'Every possession, then, is adverse, and entitled to the peaceful and benignant operation and protecting safeguard of the statute, which is not in subservience to the title of another, either by a direct acknowledgment of some kind, or an open or tacit disavowal of right on the part of the occupant; and it is in the latter case only, that the law adjudges the possession of one to the benefit of another.' "

It is said in Sedgwick & Wait, Trial of Title to Land, §758: "The adverse intention of the tenant, in the absence of proof of his own admissions to the contrary, or other proof that his possession was only permissive, or, in fact, without hostile intent, may be generally evidenced by the character of his possession and acts of ownership. If

these are sufficiently definite, open and exclusive, it will be presumed that they are done with the intent to appropriate the land.   By such acts, it is said, the party proclaims to the public that he asserts an exclusive ownership over the land. *Brumagim* v. *Bradshaw* [1870], 39 Cal. 24, 46.   Thus, it is said that an assertion of such intention, other than by acts, is unnecessary, and that the mere fact of possession would, in general, indicate that the possession was adverse. *Johnson* v. *Gorham* [1871], 38 Conn. 513, 522."

1 Am. and Eng. Ency. Law (2d ed.), 889, 890, says: "But where one is shown to have been in possession of land for the period of limitation, apparently as owner, and such possession is not explained or otherwise accounted for, it will be presumed to have been adverse; but this presumption may be rebutted by proof that the possession in its origin was not adverse, but permissive."   This statement of the law is sustained by the following authorities: 3 Kerr, Real Property, 2296, 2297; Pingrey, Real Property, §§1163, 1164; Tiedeman, Real Property (2d ed.), 661, 662; *Meyer* v. *Hope, supra; Bishop* v. *Bleyer, supra; Rowland* v. *Williams, supra; Willamette Real Estate Co.* v. *Hendrix, supra; Rung* v. *Shoneberger, supra; Watson* v. *Gregg, supra.*

In Wood, Limitations (3d ed.), 577, the rule is stated thus: "It is the intention to claim title which makes the possession adverse; but this intention must be evinced and effectuated by the manner of occupancy; and neither a mere claim of title without occupancy, nor a mere occupancy without an intent to claim title, is sufficient.   'It is not the possession alone,' says Thompson, J., 'but that it is accompanied with the claim of the fee, which, by construction of law, is deemed *prima facie* evidence of such an estate.'   The intention need not be expressed, but may be inferred from the manner of occupancy."

It is said in Washburn, Real Property (6th ed.),

§1976: "But though the occupancy may be explained, so as to do away with the effect otherwise to be ascribed to it, it must be done by the party seeking to disturb the effect of the twenty years' possession." *Doe* v. *Lawley* (1834), 13 Q. B. 954, 66 Eng. C. L. 953.

In *Meyer* v. *Hope, supra,* the court said: "By the same process of establishing disputed facts from those known, continuous, exclusive, open, notorious possession of land for twenty years, unexplained as to its commencement, or otherwise being known, we infer therefrom that there was a hostile entry as to all the world with the intent to hold the land against all comers, and that such situation characterized the possession down to the end of the statutory period requisite to title by prescription."

In *Bishop* v. *Bleyer, supra,* the court, at pages 332, 333, said: "The rule has frequently been asserted that unexplained occupancy, continued for twenty years, raises the presumption that such occupancy was under claim of right and adverse. *Carmody* v. *Mulrooney* [1894], 87 Wis. 552; *Wilkins* v. *Nicolai* [1898], 99 Wis. 178; *Wollman* v. *Ruehle* [1898], 100 Wis. 31; *Meyer* v. *Hope* [1898], 101 Wis. 123; *Wollman* v. *Ruehle* [1899], 104 Wis. 603. Such possession, when established, is conclusive as to the nature of the possession, unless rebutted or explained away by some satisfactory evidence. * * * It is true in the present case that, when the plaintiff made proof of paper title covering the disputed tract, the burden was then imposed upon the defendant to show his possession, and that it had been open, notorious, and continued for twenty years. When that is done, as stated in *Meyer* v. *Hope, supra,* 'it overcomes the presumption previously existing in favor of the true owner, and a presumption arises from the facts, in favor of the occupant, that his occupancy was characterized by all the other elements requisite to adverse possession, *i. e.,* that it began by the requisite entry, claiming title, to set the statute of limitations on the subject

running, and so continued down to the end of the statutory period.' This presumption, of course, may be rebutted by showing that the possession was under lease, contract, or permission of some kind, and not hostile to the original owner. But, unless so rebutted or explained away, such possession, so long continued, with the requisites mentioned, makes title absolute."

Appellant insists, however, that if one takes and holds possession of real estate under a mistake as to where the true boundary line is, such possession can not ripen into a title. In this State, when an owner of land, by mistake as to the boundary line of his land, takes actual, visible, and exclusive possession of another's land and holds it as his own continuously for the statutory period of twenty years, he thereby acquires the title as against the real owner. The possession is regarded as adverse, without reference to the fact that it is based on mistake; it being *prima facie* sufficient that actual, visible, and exclusive possession is taken under a claim of right. *Dyer* v. *Eldridge* (1894), 136 Ind. 654; *Richwine* v. *Presbyterian Church* (1893), 135 Ind. 80, 90, 91; *Riggs* v. *Riley* (1888), 113 Ind. 208, 213; *Brown* v. *Anderson* (1883), 90 Ind. 93, 98, 99; *Pittsburgh, etc., R. Co.* v. *Stickley* (1900), 155 Ind. 312; *Palmer* v. *Dosch* (1897), 148 Ind. 10, 12-14; *Webb* v. *Rhodes* (1902), 28 Ind. App. 393. See, also, *Abbott* v. *Abbott* (1863), 51 Me. 575, 584; *Erck* v. *Church* (1889), 87 Tenn. 575, 11 S. W. 794, 4 L. R. A. 641 and note; *Hightower* v. *Smith* (1835), 15 Tenn. 500; *French* v. *Pearce* (1831), 8 Conn. 439, 21 Am. Dec. 680, 3 Gray's Cases 76; *Carney* v. *Hennessey* (1901), 74 Conn. 107, 49 Atl. 910, 53 L. R. A. 699; *Yetzer* v. *Thoman* (1866), 17 Ohio St. 130, 91 Am. Dec. 122; *Brown* v. *M'Kinney* (1840), 9 Watts (Pa.) 565, 36 Am. Dec. 139; *Metcalfe* v. *McCutchen* (1882), 60 Miss. 145; *Harn* v. *Smith* (1891), 79 Tex. 310, 313, 314, 15 S. W. 240, 23 Am. St. 340; *Burnell* v. *Maloney* (1867), 39 Vt. 579,

94 Am. Dec. 358; *Crary* v. *Goodman* (1860), 22 N. Y.
170, 175; *Tex* v. *Pflug* (1888), 24 Neb. 666, 39 N. W.
839, 8 Am. St. 231; *Levy* v. *Yerga* (1889), 25 Neb. 764,
41 N. W. 773, 13 Am. St. 525; *Seymour* v. *Creswell*
(1881), 18 Fla. 29, 35, 36; *Seymour, Sabin & Co.* v.
*Carli* (1883), 31 Minn. 81, 16 N. W. 495; *Ramsey* v.
*Glenny* (1891), 45 Minn. 401, 48 N. W. 322, 22 Am.
St. 736; *Jordan* v. *Riley* (1901), 178 Mass. 524, 60 N.
E. 7; *Bond* v. *O'Gara* (1900), 177 Mass. 139, 58 N. E.
275; 83 Am. St. 265; *Greene* v. *Anglemire* (1889), 77
Mich. 168, 43 N. W. 772; *Bowers* v. *Ledgerwood* (1901),
25 Wash. 14, 64 Pac. 936; *Grim* v. *Murphy* (1884), 110,
Ill. 271; *Schneider* v. *Botsch* (1878), 90 Ill. 577; *Row-
land* v. *Williams* (1893), 23 Ore. 515, 32 Pac. 402; 1
Am. and Eng. Ency. Law (2d ed.), 791, 792.

In *Brown* v. *Anderson, supra,* the evidence showed that
for a long time there had been a dispute as to the location
of a division line between the lands owned by the parties;
that for more than twenty years there had been a fence
standing between the lands occupied by the parties to said
action, and by parties through whom they claimed; and
that the plaintiff and those under whom he claimed title
had cultivated and used the land on the side occupied by
them, including the land in controversy, up to the line of
said fence, as their own, continuously and uninterruptedly,
for more than twenty years. The court, under such facts,
held (pages 98, 99) that such occupancy gave title to the
plaintiff, the appellee in said appeal, by prescription, and
that the fact that said fence was not on the correct or true
line made no difference.

In *Pittsburgh, etc., R. Co.* v. *Stickley, supra,* it was
shown that appellee (the plaintiff below) and her grantors
built and maintained a fence on what they believed to be
the true line of a lot which included a strip of land be-
longing to appellant (the defendant below) and built a
house with reference to such fence, and occupied the same

for twenty-five years, treating the fence as the true boundary line; and this court held that the evidence supported the finding that appellee and her grantors claimed to own the land to the fence constructed by them, and that such possession for the statutory period gave said appellee title in fee simple.

It appears from the evidence that Elbert H. Shirk became the owner of said lot No. 81, and took possession of the same, including the real estate in controversy, after September 19, 1874, and that at some time between that date and July, 1880, he said to a witness, who testified on behalf of appellant, that he did not claim the real estate in dispute. The evidence in the cause shows that from the time said Shirk became the owner of said lot No. 81 until his death, in 1886, he occupied and used said lot, including the real estate in dispute, and the dwelling-house thereon, in all respects as his own; that he rented it, collected the rents, and offered to sell and convey the same. This presented a question of fact for the court below to determine, and, under this state of the evidence, if necessary to sustain the judgment, we would presume that the court below found that said Shirk's possession of the real estate in dispute was adverse and under a claim of right. Waiving this question, however, said statement was made by Shirk long after the time the evidence in the cause authorized the court to find that the title to the real estate in controversy had vested in the owner of said lot No. 81, which vesting of title was before said Shirk became the owner thereof. Under such circumstances, the statement, if made, would not operate to defeat his title, nor the title of those who claim under him, nor convey to the then owner of lot No. 82 any new title, or renew the former title to the part of said lot in dispute. *Riggs* v. *Riley, supra; Inhabitants, etc.,* v. *Benson* (1850), 31 Me. 381, 52 Am. Dec. 618; *Austin* v. *Bailey* (1864), 37 Vt. 219, 86 Am. Dec. 703, 706; *Hodges* v. *Eddy* (1868), 41 Vt. 485,

98 Am. Dec. 612; *Parham* v. *Dedman* (1898), 66 Ark. 26, 48 S. W. 673; 1 Ency. Evidence, 701; 1 Cyc. Law and Proc., 1013, 1014. This is true for the reason that when a title is acquired by adverse possession it is in fee simple, and continues until conveyed by the one holding such title, or until lost by adverse possession of twenty years. *Riggs* v. *Riley, supra; Roots* v. *Beck* (1887), 109 Ind. 472, 474, 475; *Cannon* v. *Stockmon* (1869), 36 Cal. 535, 540-542, 95 Am. Dec. 205, 207, 208.

Another witness testified that some time between 1880, when appellant became the owner of the paper title to lot No. 82, and 1886, that said Elbert H. Shirk offered to buy the real estate in dispute from her. This offer was made long after the time the court below was justified by the evidence in finding that the statute had run and the title became absolute in the owner of lot No. 81, and could not, therefore, affect the title of the cross-complainants who claim under said Shirk. *Meyer* v. *Hope* (1898), 101 Wis. 123, 128, 77 N. W. 720; *Tobey* v. *Secor* (1884), 60 Wis. 310, 19 N. W. 99; *McLane* v. *Canales* (1894), (Tex. Civ. App.), 25 S. W. 29; *Pacific, etc., Ins. Co.* v. *Stroup* (1883), 63 Cal. 150, 153, 154; *Cannon* v. *Stockmon, supra; Furlong* v. *Cooney* (1887), 72 Cal. 322, 14 Pac. 12; *Chapin* v. *Hunt* (1879), 40 Mich. 595; *Walbrunn* v. *Ballen* (1878), 68 Mo. 164; 3 Washburn, Real Property (6th ed.), §1970. What would have been the effect of such offer if made before the statute had run, we need not determine.

In 1886 appellant erected a brick dwelling-house on lot No. 82, with the eaves projecting several inches over the frame dwelling-house on the real estate in dispute, and it is claimed by appellant that thereafter the possession of the real estate in controversy by the owner of lot No. 81 was not exclusive. Whether said projecting eaves gave appellant any possession of the real estate in dispute, we need not determine, for the reason that it had not con-

tinued twenty years when this suit was commenced. See however, Buswell, Limitations and Adverse Possession, 347, note 2. But conceding, without deciding, that thereafter the possession of the real estate by the owner of lot No. 81 was not exclusive, as contended by appellant, it is sufficient answer to say that when said brick house was built the statute had already run in favor of the owners of lot No. 81, and their title thereto was not affected thereby under the rule already stated.

After considering all the evidence, we are satisfied that the same fully sustains the finding and judgment of the court below.

Judgment affirmed.