(No. 21158.—▇▇▇▇▇▇▇▇)
Ziba H. Osmun, Appellant, vs. Roy J. Warner et al. Appellees.

*Opinion filed April 23, 1932.*

L. D. Lowell, and D. T. Smiley, for appellant.

William M. Carroll, for appellees.

Mr. Justice Dunn delivered the opinion of the court:

Ziba H. Osmun, the appellant, filed a bill in the circuit court of McHenry county against Roy J. Warner and Anna J. Warner, the appellees, to restrain them from entering or in any manner encroaching upon a certain strip of land forty inches wide lying north of what the bill alleged to be an old established line between lots 16 and 13 of block 15 of the original plat of the village of Nunda, (now city of Crystal Lake,) and to require them to restore the strip to its former condition. The evidence was heard by a master in chancery, who reported it with his findings and recommendation that the bill be dismissed. The court, upon a hearing, overruled exceptions to the report and entered a decree dismissing the bill for want of equity, and the complainant has appealed.

The appellant owned lots 12 and 13, which fronted east on Williams street. His step-father, Richard Bonner, had owned and occupied these lots from 1895 to 1903 and E. H. Wollenberg from 1903 to 1911, when he sold them to the appellant, who continued to own and occupy them until the commencement of this suit, on March 2, 1929. Mrs. Cora Dickinson owned and occupied lot 16 from 1895 to 1916, when she sold it to the appellees, who have since owned and occupied it. The lots lie alongside of one another and all front east on Williams street, extending back to a depth of 165 feet. Lot 12 is the farthest north, lot 16 the farthest south and lot 13 is between them. Williams street extends northeast and southwest and the length of the lots is at right angles to that street, but we shall call the front of the lots east, the rear west, the line between lots 13 and 16 an east and west line and Williams street a north and south street, because it is so that the lots and their boundaries and the street are regarded in the evidence contained in the record when directions are spoken of.

The appellant's claim is that, regardless of the original location of the line between lots 13 and 16, he and his predecessors in title have been in the actual and exclusive adverse possession, visible, notorious and continuous, for more than thirty-six years prior to the filing of the bill, of lots 12 and 13; that the south boundary of their possession extended to an old established line fence supposed to be on the line between lots 13 and 16; that the appellees now dispute the fact that this old established line was on the true line between lots 13 and 16, but the appellant charges that no matter whether it was on the true line or not, he and his grantors have always since 1895 claimed all the land lying north of that old fence for a period of more than thirty-six years and that line during all that time has been known and acquiesced in as the true line between the lots. The bill alleges that the appellees claim that they are the owners of forty inches along the entire north side of the line of the

old fence and threaten to take possession of it forcibly, to chop down, take up and remove from it trees and shrubs now growing on it and to erect a garage or other structure on it; that they are now taking up and destroying shrubbery, cutting down trees and digging trenches preparatory to erecting a garage or other structure on the strip and are about to tear down what remains of the old established line fence between the lots, and threaten to take up and destroy other shrubbery and trees on the disputed strip and excavate other trenches and erect a structure thereon and will proceed to do so unless restrained by the court. The bill prayed for an injunction, temporary and permanent, and for an order requiring the defendants to restore the strip to its former condition.

The evidence shows that the appellees have been removing shrubs and trees from the disputed strip, digging a ditch on it and are preparing to erect a structure upon it. The evidence also shows, without serious controversy, that a picket fence existed as a line fence between the property now occupied by the appellant and that now occupied by the appellees from about 1895, when it was built by Mrs. Dickinson, who was then the owner of lot 16 and who lived on it at the time. The fence extended from the front to the rear of the lots, about two feet north of the house and barn. The picket fence was taken down and a wire fence was put up in its place, except that the wire fence extended from the rear of the lots only to about the rear of the residence on lot 16. A survey was made of lot 16 on June 13, 1928. At that time a portion of the fence remained. The Warners repaired the fence in 1925 or 1926. While Warner testified that there was no fence when he bought lot 16 and that he himself built the fence as a chicken fence which the surveyor found, and all on his own land, yet the weight of the evidence is decidedly against him. The evidence also showed, without serious contradiction, that the successive owners of lot 13 used, as

of right, the land up to the fence line, planting apple trees there in 1897 and gooseberry bushes in 1900. One of the apple trees and the gooseberry bushes still remain. The appellant also planted in the now disputed strip twenty little evergreens he was raising, a flowering crab, tulips, roses, peonies, sweet almond, snowballs, a pear tree, a plum tree, a grapevine and three lilacs. All this occurred without any objection on the part of any owner of lot 16, except that Warner testified that he made objection to some acts of the appellant upon the disputed strip of ground. These facts were shown by convincing testimony that a fence had been maintained between the possession of the appellant and his grantors and the possession of the appellees and their grantors since about 1895, which had been treated by the various owners of the lots as marking the division line. It is true that there is some contradictory evidence, most of which is found in the testimony of the appellee Warner. Both Mr. and Mrs. Warner testified that the fence which was there when this controversy arose was a chicken fence, which Warner put up not on a line but on their own lot. Warner, however, himself testified to some circumstances which discredit his testimony somewhat. For instance, testifying in reference to a stump, two-thirds of which was north of the line as claimed by the appellant and therefore on the appellant's lot, Warner stated that he planted the flowers around it on the south side and the appellant planted those on the north side.

There is one circumstance shown by the evidence which tends to disprove the appellant's claim to the disputed strip. It was testified to by the witness Wolck. At the time when the appellees purchased lot 16, which was in 1916, there was a building six feet square on it, located northeast of the barn, which Wolck removed in November, 1916, having bought it from the appellees. The barn was located about two feet from the line as the line was claimed by the appellant to be. Wolck testified that he got the building in the

evening, after dark, being assisted by his brother, George; that the corner of the building was at the corner of the barn and the whole of it was north of the barn. Thus located, the building was on the strip of ground here in controversy. There was no direct contradiction of Wolck's testimony. It stands practically alone and not discredited, except by the mass of testimony showing the existence of a fence nearer the barn than six feet and by the fact that Wolck moved it at night and his view of the surroundings could not have been as good as if it had been in daylight. It may be, also, that the lapse of time since 1916, when he moved the building, had dimmed his memory of the surroundings somewhat. At any rate, Wolck's location of the building could not have been correct if the fence were located as the witnesses, including the surveyor, testified it was, and the testimony locating the fence about two feet north of the barn is so convincing that the conclusion is forced that Wolck was mistaken. The witnesses who showed the long continued existence of the fence and the use of the disputed strip by the owners or occupants of lots 12 and 13 were the complainant; Fred Goodwin, who delivered coal at the Warner house and who lived in the neighborhood and knew the property and of the occupants for thirty-five years; E. H. Wollenberg, who lived on the premises as owner from 1903 to 1911, when he sold them to the appellant, and thereafter as tenant for four years; John R. Osmun, who had known the property well for thirty-six years and frequently went to the Osmun property, then owned by Bonner, the step-father of the appellant, to help with the horses; and Mrs. Georgia S. Owen, who spent two summers (1895 and 1899) with her uncle and aunt, Mr. and Mrs. Bonner, and took music lessons from Mrs. Dickinson, who owned and lived on lot 16, going around the front end of the picket fence to and from Mrs. Dickinson's home. It was also well shown that the remnants of

the fence were still in existence upon the established line about the time this controversy started.

The appellees introduced in evidence the testimony of the surveyor, Tryon, as to his survey, and a plat made by him showing the result of the survey. By his survey and plat and by his testimony and the testimony of his assistant, Katzenberger, the lot line was shown to be approximately four feet north of the old fence line. However, the survey was admittedly inaccurate. Tryon testified that he found a shortage in the frontage of the block, and to locate the lot lines in the block, including the disputed line, he apportioned the shortage to the several lots in the block. It may well be that originally the shortage was all in lot 16. At any rate, the owners of lots 16 and 13 have always heretofore considered that the actual line was marked by the fence. The survey did not show the contrary.

The evidence showed clearly that the appellant and his predecessors in title have been in adverse possession of the disputed forty-inch strip of land since Mrs. Dickinson built the picket fence, more than thirty years ago, occupying it for their own purposes, exercising acts of ownership with reference to it by planting it with trees and shrubs, and that their ownership or right to possession was not questioned until recently. The possession was actual, visible, hostile, exclusive, continuous and notorious and under claim of ownership, and ripened into a title before Mrs. Dickinson's conveyance to the appellees. (*Grim* v. *Murphy,* 110 Ill. 271; *Illinois Central Railroad Co.* v. *Houghton,* 126 id. 233; *Shedd* v. *Alexander,* 270 id. 117; *Jaster* v. *Spikings,* 312 id. 170.) The burden was on the appellant to establish title by adverse possession as against the record title, (*New York Central Railroad Co.* v. *Kinsella,* 324 Ill. 339,) and the facts showing the existence of the fence treated by the respective owners as the lot line, followed by the acts of ownership by the owners of lots 12 and 13 to the fence through more than thirty years, all of which were clearly and convincingly

shown, fulfilled the requirement. The appellant was there-fore entitled to the relief which he sought and the court erred in dismissing his bill for want of equity.

The decree will be reversed and the cause remanded, with directions to grant the relief prayed for.

*Reversed and remanded, with directions.*