PALMER *v.* DOSCH ET AL.

[No. 18,148.   Filed May 20, 1897.]

BOUNDARIES.—*Adverse Possession.*—A boundary fence between tracts of land which has existed for more than forty years, and which has been recognized by the adjoining owners and their immediate and remote grantors as the line dividing such tracts of land, is the true line, although the deeds of the respective owners conveyed the land according to the survey which showed such fence not to be the original line according to the survey.

From the Greene Circuit Court.   *Reversed.*

*Arnold J. Padgett* and *J. Alvin Padgett*, for appellant.

*Milton S. Hastings, Josiah G. Allen* and *E. E. Hastings*, for appellees.

HOWARD, J.—On September 16, 1865, appellant purchased several parcels of land in the county of Daviess, among them the following, which he has since continued to own: "Location number two hundred and seventy-nine (279), in township number three (3) north, range number seven (7) west, containing fifty (50) acres." On October 14, 1892, the appellees purchased certain adjoining lands in the same county, township and range, among them the following, which they have since continued to own: "The west half of the northeast fractional quarter of section seventeen (17), in township three (3) north, in range seven (7) west." The northeast quarter of section 17 is called "fractional" for the reason that a part of said quarter section is overlapped by said "location No. 279."

When appellant purchased location No. 279, in September, 1865, there was a fence standing on the west and south boundary lines, between this land and the above described quarter of section 17, township 3 north, now owned by appellees. This fence was so located as far back as 1853, and the boundary as so fixed had remained unchanged up to the beginning of this suit. The land in dispute lies between this fence and the true western boundary of location 279. This disputed land was, in 1853, and has since continued to be, in cultivation, up to said fence, by appellant's remote and immediate grantors, and by himself. At the time of appellant's purchase of location 279, his grantor had wheat stacked in the northwest corner of the land in controversy, near to said fence, and his grantor then pointed out to him the fence as the west boundary of said location 279. Appellant immediately took possession of his purchase, including the piece now in dispute, which he believed to be a part thereof, and thereupon, the land being low and wet, cut a ditch along by the fence. The possession so

taken was continued without interruption from the time of the purchase, in September, 1865, until the institution of this action, October 8, 1895.

Appellees contend that since it appears that appellant and his grantors intended to claim only to the western boundary of location 279 there was no adverse possession of the land here in controversy, namely, that lying west of what is now shown to be the original western boundary. It is not denied, however, that from 1853 to the present time, appellant and his immediate and remote grantors continuously claimed ownership of the tract now in controversy, cultivating the ground and raising crops up to the fence which all along they believed to be the true boundary. It further appears that appellees' grantors also treated the west and south fence as the boundary between their land and that of appellant. Even the appellee, John Dosch, testified that he went with his immediate grantor to examine the boundaries of the land before his purchase, in 1892, and this fence was pointed out to him as the boundary between the lands he was about to buy and those of appellant. It thus appears that at the end of nearly forty years after the fence is known to have been built, the owners on each side were found acknowledging it as their mutual boundary. Whatever may be the rule as to unascertained lines, or as to constructive possession in relation to a supposed boundary which turns out not to be the real one, *Silver Creek, etc., Corp.* v. *Union Lime and Cement Co.*, 138 Ind. 297, we think that we have here a case where both parties for much longer than the twenty-year period, recognized a fixed line as the common boundary of their adjoining possessions, and that the boundary so recognized should now be held to be the true one.

The intentions of parties may often be better determined from their acts than from their words. Both appellant and appellees purchased their respective lands with the understanding that the fence in question marked the true boundary. Each thus acted in the most important matter that could concern his relations to his land—its purchase; and in this they but carried out the unchanged conduct of their immediate and remote grantors who had used and cultivated the lands up to the fence as a boundary for more than an ordinary lifetime.

"The law is," said this court in *Dyer* v. *Eldridge*, 136 .Ind. 654, "that the location of a division boundary fence, acquiesced in and acted upon, and the premises improved up to the line by each, for twenty years, becomes binding as the true line. *Richwine* v. *Presbyterian Church, etc.*, 135 Ind. 80; *Wingler* v. *Simpson*, 93 Ind. 203, and cases there cited."

In *Wingler* v. *Simpson, supra*, it was held, citing numerous authorities in this and other states, that, on appeal from a survey to establish a boundary line between adjoining landowners, evidence of occupancy, under claim of title, for more than twenty years, to a line different from that fixed by the survey is admissible.

In *Brown* v. *Anderson*, 90 Ind. 93, the rule was laid down, even more emphatically, that continuous occupancy and use of land as owner for twenty years, to a fence really not upon the true boundary line, takes away the title of the real owner, and transfers it to such occupant, so that he may maintain ejectment.

There can be no question that the record in this case shows that appellant himself, to say nothing of his grantors, immediate and remote, occupied and used the land in question as owner for over thirty years.

It is true that appellant had not color of title to the disputed strip. His deed covered only location 279. He could, therefore, have no constructive possession of lands outside that location. But he had actual possession. His fence enclosed the land for over forty years, and he and his grantors cultivated the ground up to the fence continuously, and raised crops upon it for the whole time. It thus became his land by sufferance of the adjoining proprietors, by efflux of time, and by consequent operation of law.

There was here something more than claiming to the fence if that should be found to be the true boundary. The acts of the appellant showed a claim to the fence as the true boundary. The claim may have been a mistaken one, but it was not doubtful or uncertain; the title passed successively from grantor to grantee with an uninterrupted claim of the fence as the western boundary. That it was not, in fact, the original line, as run by the surveyors, can make no difference in such a case. The actions of the adjacent owners substituted it as the true line.

The finding of the court, as we think, was contrary to the evidence.

Judgment reversed, with instructions to grant a new trial.