HELTON ET AL. *v.* FASTNOW ET AL.

[No. 5,016.   Filed June 2, 1904.]

BOUNDARIES.—*Survey.*—*Adverse Possession.*—A survey can not, during the period allowed by §8030 Burns 1901 for an appeal, defeat the title of a landowner claiming by adverse possession beyond the line as fixed by the survey.   *p. 291.*

SAME.—*Line Fences.*—*Adverse Possession.*—Where the location of a boundary fence is acquiesced in and acted upon by the adjoining owners, and the premises improved up to the fence by each for twenty years, the line so established becomes binding as the true line.   *pp. 291, 292.*

SAME.—*Adverse Possession.*—*Special Finding.*—A finding, in an action involving the proper location of a boundary line, that at a remote period of time a fence was built upon the dividing line of the two tracts of land which was recognized by the adjoining owners and their grantors as marking the dividing line between the two tracts, and that the adjoining owner claiming title by adverse possession, and his grantors, had held continuous and undisputed possession of the land up to the fence for more than forty years, and during all that time had farmed and used the land up to the fence, shows adverse possession.   *p. 293.*

From White Circuit Court; *G. F. Marvin,* Special Judge.

Action by William H. Helton and wife against Amelia Fastnow and husband.   From a judgment for defendants, plaintiffs appeal.   *Affirmed.*

*J. C. Nelson, Q. A. Myers, Spencer & Hamelle, William Guthrie* and *W. S. Bushnell,* for appellants.

*E. B. Sellers,* for appellees.

ROBINSON, J.—This cause was transferred from the Supreme Court under §1337m Burns 1901.   The controversy involves the proper location of the boundary line between appellants' land in the south half of the northeast quarter of section eleven, township twenty-six north,

range four west, and appellees' land in the north half of the same quarter section. Upon a special finding of the facts the court stated conclusions of law in appellees' favor, and gave judgment accordingly. The principal question argued is that the findings are contrary to the evidence, and are not supported by sufficient evidence.

The court found substantially the following facts: Since 1900 appellants have been, and are now, the owners in fee of the south half of the above quarter section, except a strip of land in controversy, and have been residing thereon and in possession thereof; that in 1886 appellee John Fastnow became the owner in fee of the north half of this quarter section, and in 1900 conveyed the same through a trustee to his wife, appellee Amelia Fastnow, who has since owned the same in fee; that on the west forty rods of the surveyed line dividing the south half from the north half of the quarter section, about the year 1875, one Bunnell, a remote grantor of appellees, planted a hedge fence; that the line between the eighty-acre tract of appellants and the eighty-acre tract of appellees was duly and legally established by an authorized survey in 1900, and extends from an established corner stone on the east at the northeast corner of appellants' eighty-acre tract to a duly and legally established corner stone on the west, at the northwest corner of appellants' eighty-acre tract, and that the strip of land in controversy commences at the corner stone on the west, and runs thence south twelve feet, and thence east to the east corner stone at the northeast corner of appellants' eighty-acre tract, being the south half of such northeast quarter, and runs thence west to the place of beginning; that this dividing line so established between the two eighty-acre tracts is the same as the hedge fence line; that there is on the last dividing line 120 rods of rail and wire fence; that within the last two years, and more than six months prior to bringing this

action, appellees cut down the hedge fence; that at a remote period of time a rail fence had been built several feet south of the hedge fence, and connected with the fence on the east, and that such rail fence has been repaired, and was upon the dividing line between the eighty-acre tracts, and was and is recognized by the owners and grantors of appellants and appellees for more than twenty years as marking the dividing line between the two eighty-acre tracts, and more than six years ago the same was taken away for the purpose of repairing; that appellants and their grantors have farmed and used the south half of the quarter section up to this rail fence south of the hedge, under claim of ownership of such land; that appellants and their grantors have had continuous, undisputed, and adverse possession of the south half of the quarter up to such rail fence for more than forty years last past, and have farmed up to the rail fence south of the hedge during all that time; that appellees and their grantors have had continuous, undisputed, and adverse possession of the north eighty-acre tract up to the rail fence south of the hedge for more than forty years last past, and during all that time have farmed and used the land up to the rail fence south of the hedge; that appellees have not recognized the hedge fence line as the dividing line between the eighty-acre tracts; that in 1900 appellees cut down the hedge fence, and afterwards, in the same year, undertook to remove and build a fence south of the hedge fence line; this finding further sets out certain acts done by the parties in the same year, which amount to an assertion of title to the strip by each of the parties, and their respective denials; that the south half of the quarter section of land is of the value of $50 per acre.

A survey, upon application of the immediate grantor of appellants, was made in December, 1899, to ascertain the dividing line between the north and south halves of the quarter section. From this survey an appeal was taken by

Helton *v.* Fastnow.

appellees, and a resurvey ordered by the circuit court, and afterwards duly made in June, 1900. These two surveys practically correspond. Appellants claim this line to be the true boundary line between the north and south halves of the quarter section, while appellees claim the true boundary line begins on the west line of the quarter section, about twelve feet south of the surveyed line, and runs east to the east line of the quarter section, practically to the same point as the surveyed line; making the strip of ground in dispute twelve feet wide at the west end, and running to a point at the east end. Appellees claim title by adverse possession for more than twenty years.

The survey, as between the parties, is, by the statute, *prima facie* evidence in favor of the line so established during the three years allowed for appeal. And from the second survey an appeal may be had in like manner as from the first survey. §8030 Burns 1901. The first survey was in December, 1899, and the last was made in June, 1900. This case was tried in December, 1901. During the period allowed for an appeal, the survey could not serve to defeat the title held and acquired by appellees through adverse possession. A survey establishes the line as determined by it, but it does not determine title. *Wood* v. *Kuper,* 150 Ind. 622; *Cleveland* v. *Obenchain,* 107 Ind. 591; *Russell* v. *Senior,* 118 Ind. 520; *Riggs* v. *Riley,* 113 Ind. 208. In *Cleveland* v. *Obenchain, supra,* the court said: "A landowner who submits to a survey does not by so doing lose any of his land. In submitting to a survey he does not surrender any valid title that he may have, no matter how it may have been acquired. In not objecting to a survey he does not put himself in the position of surrendering his land, or any part of it."

It appears that for a number of years there was a hedge fence, beginning at the west end and extending thirty or forty rods east, on the line claimed by appellants to be the

true boundary line; that the hedge was placed there in 1874 or 1875, or probably earlier; that it was never trimmed, and was removed by appellees a short time before this suit was brought. But the witnesses are not agreed as to how the hedge came to be placed there, nor are they agreed as to whether there was a fence leading east from the east end of the hedge to the east line of the quarter section. There is some evidence, also, that there was a rail fence on the line claimed by appellees to be the true line, beginning at the west line, and running in a straight line through to the east line of the quarter section; that this fence was first built about 1860. One witness said the rail fence was there in 1853 or 1854, and continued until about 1895. But about this rail fence the witnesses do not agree. Upon the material questions in the case there is a direct conflict in the testimony of the witnesses for appellants and those for appellees. We have carefully read all the evidence set out in the bill of exceptions. Taking from the findings such matters of evidence as they may be said to contain, we do not think it can be said that the findings are contrary to the evidence or that they are not supported by the evidence. There is evidence that the rail fence was treated as the boundary line between the north and south halves of the quarter section by the respective owners up to within a short time before this suit was brought, and extending back for more than twenty years, and that the respective owners farmed and pastured the land as their own land up to this rail fence. It is true, there is evidence to the contrary, but after a careful consideration of all the evidence we do not feel authorized to disturb the court's conclusion. In *Dyer* v. *Eldridge,* 136 Ind. 654, the court said: "The law is that the location of a division boundary fence, acquiesced in and acted upon, and the premises improved up to the line by each, for twenty years, becomes binding as the true line." See *Palmer* v. *Dosch,* 148 Ind. 10; *Wingler* v. *Simpson,* 93

Ind. 201; *Brown* v. *Anderson,* 90 Ind. 93; *Richwine* v. *Presbyterian Church,* 135 Ind. 80; *Main* v. *Killinger,* 90 Ind. 165.

It is objected that the finding that the possession was adverse is a conclusion, and not the finding of a fact. It is true the finding states that appellees' possession was adverse, but the court also found that at a remote period of time the rail fence was built, and was upon the dividing line between the two eighty-acre tracts, and was and is recognized by the owners and grantors of appellants and appellees for more than twenty years as marking the dividing line between the two tracts, and that appellees and their grantors have had continuous and undisputed possession of the north tract up to the rail fence for more than forty years last past, and during all that time have farmed and used the land up to the rail fence. We think this finding comes clearly within the rule stated in *Collett* v. *Board, etc.,* 119 Ind. 27, 4 L. R. A. 321: "An entry upon land with the intention of asserting ownership to it, and continuing in the visible, exclusive possession under such claim, exercising those acts of ownership usually practiced by owners of such land, and using it for the purposes to which it is adapted, without asking permission and in disregard of all other conflicting claims, is sufficient to make the possession adverse. Such a possession, continued for twenty years or more, is equivalent to a grant." See *Roots* v. *Beck,* 109 Ind. 472; *Dyer* v. *Eldridge, supra; Riggs* v. *Riley, supra.*

No exception was taken to the conclusions of law, and no objection made to the form of the judgment—that appellants take nothing by their action, and that appellees recover costs.

Judgment affirmed.