## ROSENMEIER *v.* MAHRENHOLZ.

[No. 22,097. Filed May 6, 1913.]

1. APPEAL.—*Review.—Ruling on Demurrer.—Waiver of Error.— Briefs.*—An assignment of error in overruling a demurrer to the complaint is waived where neither the complaint and demurrer, nor their substance, is set out in the brief, and no proposition or point is therein contained which presents any objection to the complaint. p. 469.

2. BOUNDARIES.—*Establishment.—Surveys.—Procedure on Appeal to Circuit Court.—Complaint.*—Under §9518 Burns 1908, §5955 R. S. 1881, an appeal to the circuit court from a survey could be tried on the field notes and original papers without the filing of any pleadings, and no reason is apparent why pleadings should be required under §9519 Burns 1908, Acts 1901 p. 590, requiring the court to find and determine the true boundary, if it finds the survey appealed from to be incorrect; but, assuming that under the latter section pleadings are essential, a complaint which sets forth a description of the line as found by the surveyor and appealed from, alleging that the line so located is incorrect, and setting forth the description of a line which is alleged to have existed for more than forty years, and is alleged to be the true line, is sufficient to meet the requirements of a complaint from the appealing party. p. 470.

3. APPEAL.—*Questions Reviewable.—Waiver.—Briefs.*—Objections to instructions are waived where no instructions are set out in appellant's brief and no objection to any instruction is indicated in the points or propositions therein contained. p. 471.

4. BOUNDARIES.—*Establishment.—Evidence.—Sufficiency.*—On appeal to the circuit court from the survey of a boundary, evidence showing that the original grantor, after conveying part of his land, met with the grantee and located the boundary line which was not definitely fixed by the deed, and the line so located was recognized for forty years as the true line, and during that period the premises were improved and used up to that line by the owners, supports the verdict finding such line to be the true line. p. 471.

5. BOUNDARIES.—*Establishment.—Acquiescence.*—Where the location of a division boundary fence is acquiesced in and acted upon, and the premises are improved and used up to the line for twenty years, it becomes the true line. p. 473.

6. BOUNDARIES.— *Establishment.— Adverse Possession.— Evidence. —Sufficiency.*—Although plaintiff, on appeal to the circuit court from the survey of a boundary, was led to say on cross-examination that he never claimed or intended to hold any more than his deed called for, considering such statement with evidence showing that plaintiff believed that he had secured by his deed all the land to the line on which a fence had been built and maintained for many years, and that he entered into possession and claimed the ownership of the land to the line of such fence, the jury was warranted in finding that plaintiff's possession to the line of such fence was adverse. p. 474.

7. BOUNDARIES.—*Establishment.—Adverse Possession.—Estoppel.*—Plaintiff's participation in a survey caused to be made by an adjacent owner in the statutory manner, and his statement that

he would have to be satisfied with the line fixed by such survey, did not estop him from afterwards questioning the correctness of the survey by appeal to the circuit court, nor could such conduct and statement defeat his title to the line marked by a fence and which had ripened by adverse possession.  p. 475.

From Vanderburgh Circuit Court; *C. A. DeBruler,* Judge.

Proceedings by Lena Rosenmeier and another for the establishment of a boundary line, and from a judgment of the circuit court, on the appeal of Christian Mahrenholz, finding against the survey and establishing the boundary line, this appeal is prosecuted.  (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.)  *Affirmed.*

*Elmer Q. Lockyear,* for appellant.
*Philip C. Gould* and *Daniel H. Ortmeyer,* for appellee.

Cox, J.—Appellant, by appropriate proceedings, procured the county surveyor to locate and establish by survey the boundary line between a tract of land owned by her and an adjoining tract owned by appellee.  Appellee appealed from the survey to the circuit court where he filed a complaint on which issues were formed and, after a trial by jury, there was a finding against such survey and another line was found and adjudged to be the true boundary between the lands of the parties.  These proceedings were all had under the statutory authority which is found in §§9512-9519 Burns 1908, §§5950-5955 R. S. 1881, Acts 1901 p. 160 inclusive.

From the judgment of the circuit court appellant brings this appeal and assigns as error that, (1) the court erred in overruling appellant's demurrer to appellee's complaint in that court, and, (2) the court erred in overruling appellant's motion for a new trial.  The first error is waived.

1.  The complaint and the demurrer to it are not set out in appellant's brief nor is their substance.  Moreover, appellant's brief does not contain any proposition or point under this assignment of error which presents any objection

to the complaint. Rule 22, clause 5, of the rules of this court.

It may be said, however, that appellee's complaint clearly sufficed. Under the law as it was formerly when the circuit court had no other duty than to try the question whether the survey was correct and if found incorrect to order a resurvey, it was held by this court that the appeal was tried in the circuit court on the field notes and original papers relating to the survey in the same manner as appeals from justices of the peace are tried on the original papers, and that pleadings were unnecessary and inappropriate. §9518 Burns 1908, §5955 R. S. 1881; Cleveland v. Obenchain (1883), 89 Ind. 274. By a later act of the legislature (§9519 Burns 1908, Acts 1901 p. 160), in addition to determining the correctness of the survey appealed from, the circuit court is required to find and determine the true boundary. And if it is assumed that this injects a new issue into the matter on appeal which requires a complaint from the appealing party, still we think appellee's complaint answered the requirement. Among other appropriate allegations it sets forth a description of the line as found by the surveyor and appealed from; it alleges that the line so located is incorrect and it sets forth a description of a line which it is alleged had existed for more than forty years before the filing of the complaint and, it is alleged, is the true line. But it is not apparent that any greater need for a complaint on appeal is presented by the provisions of §9519, supra, than by those of §9518, supra. The section last named contemplated the discovery and fixing of the true boundary as well as the other and the only material difference is the method of doing so. Cleveland v. Obenchain (1886), 107 Ind. 591, 8 N. E. 624.

Appellant's motion for a new trial presents as causes, (1) that the verdict of the jury is not sustained by sufficient evidence and is contrary to law and, (2) that the court erred in giving certain instructions to the jury. No instructions

3. are set out in appellant's brief and in no point or proposition of it is any objection to any instruction indicated. Objections to instructions are, therefore, waived.

There is little conflict in the evidence. In 1855 Henry Opperman became the owner of the west half of the west half of the southwest quarter of section 29, township 4. 6 south, range 11 west in Vanderburgh County, Indiana. A public highway divided the tract, crossing it near the middle from east to west at an angle. This highway was known as the Middle Mt. Vernon road. On September 25, 1861, Henry Meinert became the owner, through mesne conveyances from Opperman of a certain 15 acres off of the west side of the tract first described which was designated the west 15 acres. On September 30, 1865, Opperman conveyed to Henry Freund 13 acres off of the west end of the tract east of the 15 acres owned by Meinert, and it was designated the north 13 acres. On October 19, 1865, Opperman conveyed to Meinert 5 acres more of his original tract and in the deed it was described as follows: "Five (5) acres of land being a part of the middle part of the east half of the west half of the west half of the southwest quarter of section twenty-nine (29), town six (6) south of range eleven (11) west being a strip of five (5) acres adjoining the land of Henry Meinert and lying between the land conveyed by said Opperman to Henry Freund on the north side and the Evansville and Middle Mt. Vernon Road on the south side together with all the appurtenances thereto belonging."

This description did not definitely fix the east line of the five acre tract conveyed by this deed. It appears from the evidence that immediately after the conveyance Meinert and Opperman, the latter then being still the owner of the residue of the original tract which he purchased in 1855 and a part of which joined the east side of the five acre tract he had conveyed to the former, met and located the division

line between them. It is conceded by appellant that the evidence shows that thereupon Meinert built a worm rail fence on this line and that thereafter the respective proprietors with the full knowledge and consent of each other took and held possession of the land on their respective sides of the fence and cultivated it. The evidence, we think, shows that Opperman participated in the construction of the division fence and bore his share of the work of keeping it up.

On November 18, 1871, it is shown that Opperman conveyed what was intended to be the residue of his original tract, including that adjoining Meinert's five acre tract on the east, to appellee. On the day immediately preceding this conveyance a survey of this residue was made, and a plat showing all the subdivisions of the original tract. This survey followed the division line as fixed by the rail fence above referred to and the plat was in accordance with the survey. With appellee and others interested Henry Meinert was present during this survey and he agreed at that time with the others that the fence was the east boundary line of his five acre tract and divided it from that part of Opperman's land which joined it on that side. The scrivener who prepared the deed from Opperman to appellee failed to follow exactly the dimensions of the survey along the south line of the five acre tract from the southwest corner of it along the center of the Mt. Vernon road to the fence and instead of giving a dimension found by the survey to be 2.06 chains, gave it as 2.66 chains. Out of that mistake this controversy came. The line of the rail fence gave Meinert 4.93 acres while the line of the deed gave him 5.47 acres. Appellee took possession of all the land indicated by the survey up to the rail fence and tilled the soil and gathered the crops on his side of it, under the belief and claim that he was the owner up to the time of the survey of 1909. In this claim of ownership to the fence and that it was the dividing line, the evidence shows that

Meinert acquiesced.  The fence was repaired and rebuilt at times by the coöperation of Meinert and appellee who lived on the adjoining tracts until the death of Meinert in 1899.  At one time, more than twenty years before the survey of 1909, appellee had suggested to Meinert that they join in having the line surveyed and the corners marked by stones.  Meinert declined, saying that as they were both satisfied it would be a useless expenditure of money.  He agreed with appellee that the fence was the line between them and he did not claim beyond it.  In 1907 the son of appellee was in possession of the Meinert tract as a tenant and prospective purchaser and he and appellee removed the old fence which was partly decayed.  The ground it had covered, about six feet in width, was ploughed by throwing half of it to the Meinert side and the other half to the side of appellee leaving a dead furrow in the center.  In 1908 the five acre tract was set off to appellant, a daughter of Henry Meinert, and thereafter she first disputed the line and procured the survey involved in this appeal.  The verdict of the jury found the true line to be that defined by the rail fence while the survey appealed from placed it about 40 feet further east.  The evidence sustains the verdict.  As we have seen the deed to Meinert of his five acre tract left its east line uncertain.  He and Opperman located the line and on that line a fence was built and maintained for 40 years and for that time recognized as the true line.  It has been

5.   decided many times in this State that the location of a division boundary fence, acquiesced in and acted upon, and the premises improved and used up to the line by each owner for twenty years becomes the true line.  *Ball* v. *Cox* (1856), 7 Ind. 453; *Brown* v. *Anderson* (1883), 90 Ind. 93; *Main* v. *Killinger* (1883), 90 Ind. 165; *Wingler* v. *Simpson* (1884), 93 Ind. 201; *Richwine* v. *Presbyterian Church* (1893), 135 Ind. 80, 90, 34 N. E. 737; *Dyer* v. *Eldridge* (1894), 136 Ind. 654, 36 N. E. 522; *Palmer* v. *Dosch* (1897), 148 Ind. 10, 47 N. E. 176; *Burr* v. *Smith*

(1899), 152 Ind. 469, 53 N. E. 469; *Curless* v. *State* (1909), 172 Ind. 257, 87 N. E. 129, 88 N. E. 339; *Webb* v. *Rhodes* (1902), 28 Ind. App. 393, 61 N. E. 735; *Logsdon* v. *Dingg* (1904), 32 Ind. App. 158, 69 N. E. 409; *Helton* v. *Fastnow* (1904), 33 Ind. App. 288, 292, 71 N. E. 230; *Davis* v. *Waggoner* (1908), 42 Ind. App. 115, 83 N. E. 381, 84 N. E. 1105; *Pittsburgh, etc., R. Co.* v. *Jellison* (1908), 42 Ind. App. 628, 86 N. E. 501; *Furst* v. *Satterfield* (1909), 44 Ind. App. 613, 89 N. E. 906; *Welborn* v. *Kimmerling* (1910), 46 Ind. App. 98, 89 N. E. 517, 91 N. E. 982.

The correctness of this rule is not controverted by counsel for appellant but it is said by counsel: "If holding, he disclaimed ownership except to the true line, wherever that might be, then his possession would not be adverse." In support of this proposition counsel cites *Pittsburgh, etc., R. Co.* v. *Stickley* (1900), 155 Ind. 312, 58 N. E. 192; and *Silver Creek Cement Corp.* v. *Union Lime, etc., Co.* (1894), 138 Ind. 297, 35 N. E. 125, 37 N. E. 721. In the latter case it was said: "If one is ignorant of the location of a boundary, and intends to claim only to the true line, wherever that may be, his possession, even if actual, is not adverse." Counsel attempts to bring this case within this rule by the fact that appellee was led to say on cross-examination that he never claimed or intended to hold any more than his deed called for. But it is quite clear that this does not make the case fall within the rule. The evidence other than this statement shows that appellee had always believed that the fence was Meinert's east boundary. Meinert had materially induced this belief on the part of appellee by his statement to appellee and Opperman when the survey was being made preliminary to appellee's purchase of the adjoining tract that the fence was the line between them. Appellee believed that he had secured by his deed from Opperman all the land to the fence and he entered into possession of it and claimed ownership of it for more than 20 years, a claim which Meinert not only acquiesced in

but affirmatively conceded. The statement of appellee relied on by counsel must be considered in connection with these other claims and, so considered, the jury were warranted in finding that appellee's possession was adverse. *Logsdon* v. *Dingg, supra; Pittsburgh, etc., R. Co.* v. *Stickley, supra.*

The uncontradicted evidence shows that appellant procured the survey in accordance with the statute; that appellee was served with notice and consented to it; 7. that he was present when the survey was made and helped to find stones and to dig holes for stone markers which were set by the surveyor; that he said nothing about the line indicated by the fence; that when the stone was being set to mark the line as then surveyed he had said, "If that is the line of the five acres, I guess I must be satisfied"; that he paid half the expense of the survey; that a few days later he offered to give appellant full five acres but was not willing to give her 5.5 acres; that a week after the survey appellant set a skeleton wire fence along the newly-surveyed line. It is contended by counsel for appellant that these facts estopped appellee from afterwards questioning the correctness of the survey and that therefore the verdict should have been against appellee. *Mull* v. *Orme* (1879), 67 Ind. 95; *Horton* v. *Brown* (1891), 130 Ind. 113, 29 N. E. 414; and *Gullett* v. *Phillips* (1899), 153 Ind. 227, 54 N. E. 804, are relied on to sustain the contention. They do not do so. It appears that neither of the parties to the boundary controversy in *Mull* v. *Orme, supra,* ever claimed or recognized a certain fence as the line between them, and that there was nothing but a bare occupancy of the tract involved in the case, without any claim of ownership. Under such circumstances it was held that a survey made and marked by the occupier which fixed a line other than the fence estopped him from afterwards claiming the fence as the line. In *Horton* v. *Brown, supra,* the parties, during the time in which they had a right to appeal from a survey which had been made, adjusted their dis-

putes concerning their boundaries and mutually yielded the possession of land to which they claimed title to the other, and set posts and moved their fences to the agreed line. Such acts were held to be an estoppel. In *Gullett* v. *Phillips, supra,* the parties agreed where the surveyor should establish the line, and procured him to run and establish it accordingly, and it was held that this was conclusive on the parties on appeal from the survey. In the case before us it also appears from the evidence without contradiction that the next day after the survey appellee called on the surveyor at his office and protested that the survey did not mark the true line, took steps to appeal from the survey and notified appellant to that effect before she built the fence. As appellee's title up to the line marked by the fence had ripened by adverse possession his participation in the survey and what he said at that time did not defeat that title. It has been held that neither payment of rent nor a survey unappealed from will defeat a title previously perfected by adverse possession for more than 20 years, nor revive the right of the original owner. *Cleveland* v. *Obenchain, supra; Riggs* v. *Riley* (1888), 113 Ind. 208, 15 N. E. 253; *Spacy* v. *Evans* (1899), 152 Ind. 431, 52 N. E. 605; *Miller* v. *White* (1902), 28 Ind. App. 371, 373, 62 N. E. 1021; *Logsdon* v. *Dingg, supra.* And this is the rule whether the holder of the title by prescription procures the official survey to be made or merely consents to it at the instance of his opponent. *Spacy* v. *Evans, supra; Fatic* v. *Myer* (1904), 163 Ind. 401, 72 N. E. 142; *Wood* v. *Kuper* (1898), 150 Ind. 622, 50 N. E. 755; *Williams* v. *Atkinson* (1899), 152 Ind. 98, 52 N. E. 603, *Helton* v. *Fastnow, supra.* In *Rennert* v. *Shirk* (1904), 163 Ind. 542, 72 N. E. 546, it was held that when title has been acquired by 20 years' adverse possession, such title is not affected by a subsequent statement of the claimant that he did not claim the real estate in dispute.

This evidence shows that the jury by its verdict substantially gave that exact justice which is the aim of the law.

Appellant was given all ever claimed by her father through whom she claimed and who had himself set the bound to his possessions, and within 7-100 of an acre of the full five acres conveyed to him. Appellee offered to fix the line at a point which would have given her full 5 acres. To have fixed the line on the survey of 1909 would have deprived appellee of nearly half an acre that he had possessed and believed he owned for nearly 40 years.

Judgment affirmed.

NOTE.—Reported in 101 N. E. 721. See, also, under (1, 3) 2 Cyc. 1014; 3 Cyc. 388; (2, 4) 5 Cyc. 950; (5) 5 Cyc. 940, 950; (6), 5 Cyc. 950, 967, (7) 5 Cyc. 936, 950. As to waiver by pleading over, see 13 Am. Dec. 547. As to estoppel by acquiescence in boundary agreements, see 22 Am. St. 35. For a discussion of a parol agreement establishing a boundary line as affected by the statute of frauds, see 8 Ann. Cas. 83; Ann. Cas. 1912 B 662.