## GRIM v. JOHNS ET AL.

[No. 9,289. Filed April 5, 1916.]

1. ADVERSE POSSESSION.—*Defeating Acquired Title.*—Where one had acquired title by adverse possession to a strip between the platted line of his lot and a fence, his subsequent expression of satisfaction with a survey made by the adjoining owner showing that the fence was beyond the original lot line, and his statement that they would move the fence, did not defeat his title or operate as a conveyance of the strip. p. 518.

2. ADVERSE POSSESSION.—*Defeating Acquired Title.—Estoppel.*— Where one had acquired title by adverse possession to a strip between the platted line of his lot and a fence, his subsequent agreement to move the fence to the original lot line, not having been acted on, and no money having been expended on the faith of it, did not estop him from claiming the strip. p. 519.

From Huntington Circuit Court; *Samuel E. Cook*, Judge.

Action by Samuel H. Grim against Eva A. Johns and another. From a judgment for defendants, the plaintiff appeals. *Reversed.*

*C. K. Lucas*, for appellant.

*Fred H. Bowers* and *Milo N. Feightner*, for appellees.

CALDWELL, J.—Appellant brought this action to quiet his title to certain real estate alleged to be owned by him, situate in the town of Roanoke, Huntington County. From a judgment in favor of appellees, he prosecutes this appeal. The sufficiency of the evidence to sustain the decision is the only question presented and discussed. The real estate to which appellant seeks to quiet his title is designated in the complaint as lot No. 13 in Horton's Addition. The division lines of the lots in that addition do not run according to the cardinal points, but angle eastward, running north and northward running west, etc. On the southwest line of the lot, there is a public street. In the first paragraph of the complaint, the southeast and the northwest lines are described as extending northward along the respective lines of the lot a distance of 4.63 and 4.645 chains respectively from the southeast and southwest corners respectively. The evidence establishes that as platted lot 13 and lot 12 west of it and lot 14 east of it, each extended a distance of 4.50 chains northward from the street. Appellant is the owner of the record title to lot 13, and appellee, Eva A. Johns, is the owner of the record title to lot 16, which abuts on the northeast line of lots 12, 13, 14 and 15. The ground in controversy in this action is the strip included in the description set out in the complaint, but not included within the platted dimensions of lot 13. This strip lies along the northeast side of lot 13 as platted, and is .145 chains wide at one end, and .13 chains wide at the other end. The evidence is conclusive that prior to 1898, title to the real estate as described in the first paragraph of the complaint including the strip in controversy had ripened in appellant by the adverse holding of himself and his predeces-

sors. This fact is not contested by appellees in the brief filed in their behalf, but it is their contention that in said year a line other than as claimed by appellant was established by agreement. The facts are as follows: In 1898, the record title to lot 16 was in Zent; that to lot 13 was in Webster. For more than forty years prior thereto, a fence extended on and along the northeast line of the strip of ground above described, the circumstances being such that this fence marks the line between the two parcels of land as established by adverse holding. There was no evidence that at any time prior to said year any one questioned the line as indicated by the fence. In that year, the town authorities employed Ruggles the county surveyor to make a resurvey of certain portions of the town site. There was evidence that at the time when such resurvey was being made, Zent, feeling some uncertainty respecting the lines and corners of lot 16, employed Ruggles to survey the lot, and informed Webster of the fact. Ruggles thereupon surveyed the lot, establishing its corners and running its lines, using as his guide the recorded plat of a previous survey. Webster, at the invitation of Zent or Ruggles was present and served as a chainman. According to the Ruggles survey, the line extending from the southwest corner to the southeast corner of lot 16, and marking the boundary between lots 13 and 16 followed the southwest line of said strip thus indicating that such strip was a part of lot 16 as platted. There was evidence that when Webster saw the result of the survey, he expressed himself as satisfied therewith, and that he said to Zent: "We will move the fence over now if you want to," to which Zent replied: "We will just let it go until the fence needs repairing,

and then we will put it on the line." The parties took no steps to move the fence, and continued to occupy their respective tracts up to the old fence until May 16, 1900, when Zent conveyed lot 16 to Bridge by the record description. By the decease of the latter, the lot descended to his widow, who afterwards intermarried with Jacob Johns, and who is the appellee Eva A. Johns. February 9, 1903, Webster conveyed lot 13 to appellant, describing it as lot 13 in Horton's Addition. At that time the old fence constituted the apparent boundary between the two tracts, and there was no evidence that Grim prior to such time had any knowledge to the contrary or of the Ruggles survey and the lines run thereby, or of any understanding existing between Zent and Webster. Zent, after he had conveyed lot 16, and after lot 13 had been conveyed to appellant, informed the latter that the surveyed line ran south of the old fence, to which Grim made no response. This action was commenced in June, 1913. Shortly before that time, appellee, with knowledge that appellant claimed that the old fence was the line, agitated the question of the removal of the fence to the surveyed line. After some controversy, appellant agreed that the fence might be moved, which appellees commenced to do the next morning, whereupon appellant ordered them to desist, and on their failure to do so, commenced this action.

At the time of the Ruggles survey, Webster was in possession of the entire tract situated south of the old fence. He held and claimed to own it as lot 13. Zent had asserted no title to any part of it. Webster understood that he owned only lot 13, but he believed that that lot extended as far north as the fence, and that it included the

strip in dispute here. Subsequently he negotiated with appellant for the sale of the lot, and in company with him inspected it, without informing him that the line was otherwise than as indicated by the position of the fence, or that there was any arrangement for the removal of the fence. Thereupon, pursuant to such negotiations, Webster conveyed the tract to appellant, describing it as lot 13, and under such description he yielded and appellant took possession of and thereafter claimed to own the entire tract. So matters stood for another period of ten years. As we have said, the fact that Webster's title to the tract up to the fence had ripened into a fee by an adverse holding is not controverted.

1. Webster then, at the time of the survey, owned the strip in fee, by reason of such adverse holding. Appellees, while apparently conceding this fact at least by implication, take the position that title to the strip passed to Zent by virtue of the Ruggles survey, and the statements made by Webster respecting the result of that survey. It should be kept in mind that we are not confronted here with a situation wherein the location of a line dividing the estates of two proprietors is in doubt or dispute. The location of the old fence was ascertained. If at one time it did not mark the true line, it had become such by adverse possession. The Ruggles survey if correct ascertained the true platted north line of lot 13, but it did not determine the line dividing Webster's land from Zent's. Under the circumstances, Webster's statement or the bare agreement to remove the fence at sometime in the future, did not operate as a conveyance of the strip, the title to which he had acquired by adverse possession. Language used by the Supreme Court in *Rosenmeier* v.

*Mahrenholz* (1913), 179 Ind. 467, 101 N. E. 721, is applicable here: "As appellee's title up to the line marked by the fence had ripened by adverse possession, his participation in the survey and what he said at that time did not defeat that title. It has been held that neither payment of rent nor a survey unappealed from will defeat a title previously perfected by adverse possession for more than 20 years, nor revive the right of the original owner. (Authorities). And this is the rule whether the holder of the title by prescription procures the official survey to be made or merely consents to it at the instance of his opponent. (Authorities). In *Rennert* v. *Shirk* (1904), 163 Ind. 542, 72 N. E. 546, it was held that when title has been acquired by 20 years' adverse possession, such title is not affected by a subsequent statement of a claimant that he did not claim the real estate in dispute."

There is presented here no question of estoppel that may operate in favor of appellees. The agreement to move the fence was not acted upon; no money was expended on the faith of it; 2. appellees do not claim that they or their predecessors in title took a conveyance of lot 16 from Zent with the understanding that the line was otherwise than as indicated by the old fence or that they had any knowledge of the agreement between Webster and Zent. They introduce no evidence to that end. Title having passed from Zent, his successors remained passive for thirteen years before taking any steps to move the fence. If the facts here arouse the principle of equitable estoppel, it should be applied in favor of appellant, rather than appellees. In our judgment, the evidence does not sustain the decision. *Rosenmeier* v. *Mahrenholz, supra; Cleveland* v. *Obenchain* (1886), 107 Ind. 591, 8 N. E. 624;

*Rennert* v. *Shirk, supra; Wood* v. *Kuper* (1898), 150 Ind. 622, 50 N. E. 755; *Fatic* v. *Myer* (1904), 163 Ind. 401, 72 N. E. 142; *Williams* v. *Atkinson* (1899), 152 Ind. 98, 52 N. E. 603; *Riggs* v. *Riley* (1888), 113 Ind. 208, 15 N. E. 253; *Logston* v. *Dingg* (1904), 32 Ind. App. 158, 69 N. E. 409; *Helton* v. *Fastnow* (1904), 33 Ind. App. 288, 71 N. E. 230; *Amburgy* v. *Burt, etc., Lumber Co.* (1905), 121 Ky. 580, 89 S. W. 680; *Washington Rock Co.* v. *Young* (1905), 110 Am. St. 682, note; *Randleman* v. *Taylor* (1910), 94 Ark. 511, 127 S. W. 723, 140 Am. St. 141.

The judgment is reversed, with instructions to sustain the motion for a new trial, and for further proceedings not inconsistent with this opinion.

NOTE—Reported in 112 N. E. 13. As to admissibility of evidence of reputed title in action involving adverse possession, see Ann. Cas. 1914 D 243.