SCHEIGERT ET AL. *v.* BOYER ET AL.

[No. 9,732.   Filed April 1, 1919.]

1. APPEAL.—*Review.—Harmless Error.*—In an action to quiet title, even though an allegation that plaintiff's possession was an "adverse possession" was only a conclusion, the overruling of a demurrer to the complaint was not reversible error, in view of §§350, 407, 700 Burns 1914, §§345, 398, 658 R. S. 1881, providing that no judgment shall be reversed for errors not affecting the substantial rights of the adverse party, etc., where the record shows that the cause was fairly determined on its merits, and that the ruling on the demurrer was harmless. pp. 680, 681.

2. PLEADING.—*Complaint.—Indefinite Allegations.—Remedy.— Motion to Make More Specific.*—If defendants, in an action to quiet title, think that an allegation in the complaint relative to adverse possession is too vague and indefinite, their remedy is not by demurrer, but by motion to make the complaint more specific. p. 681.

3. TRIAL.— *Verdict.— Interrogatories.— Inconsistent Answers.*— Where the answers of the jury to interrogatories are incon-

sistent, they antagonize and destroy each other, and cannot control the general verdict. p. 682.

4. QUIETING TITLE.—*Verdict.—Answers to Interrogatories.—Conflict.*—In an action to quiet title alleged to have been acquired by adverse possession, a negative answer to an interrogatory, "Was it the intention of M, the owner of lot six immediately prior to the time said lot was purchased by plaintiffs, to claim title to any part of lot five, the lot now owned in part by these defendants?" was not necessarily in conflict with findings that M, during the time he was the owner of lot six, claimed adversely a part of lot five, nor were such answers in irreconcilable conflict with a general verdict for plaintiff. p. 683.

5. APPEAL.—*Review.—Ruling on Motion for New Trial.—Jury Trial.—Failure to Object.*—In an action to quiet title, appellants cannot predicate error on the action of the trial court in submitting the case to a jury for trial, where they made no request for trial by court and no objection was made at the time to the submission of the cause to the jury. p. 684.

6. QUIETING TITLE.—*Pleading.—Damages.—Diminution in Rental Value.*—In an action to quiet title, allegations in complaint that plaintiffs were remodeling a dwelling house, that it became necessary to make an entrance on the side of the house, that it was necessary to build a walk to such entrance, and that by reason of the erection and construction of a fence by defendants, plaintiffs were prevented from building the walk and from enjoying free use of the entrance, and that they are damaged, etc., are sufficient to authorize the recovery of damages for diminution of the rental value of the property. p. 684.

7. QUIETING TITLE.—*Damages.—Diminution of Rental Value.*—In an action to quiet title to land upon which defendants have encroached, the measure of damages is usually the difference in the rental value occasioned by the encroachment and obstruction, though, under proper circumstances, the recovery may take a wider scope. p. 685.

8. ADVERSE POSSESSION.—*Hostile Character of Possession.—Evidence.*—In an action to quiet title, evidence *held* sufficient to sustain a finding that the occupation and possession of the land in controversy by plaintiffs and their grantors was hostile and under claim of ownership sufficient to establish title by adverse possession. p. 688.

9. BOUNDARIES.—*Establishment.—Acquiescence.*—Where the location of a division boundary fence, acquiesced in and acted upon, and the premises improved and used up to the line by each owner for twenty years, it becomes the true boundary line. p. 688.

10. BOUNDARIES.—*Establishment.*—*Acquiescence.*—*Estoppel.*—In an action to quiet title to a strip of land claimed by plaintiff to have been acquired by adverse possession, *held* that the facts shown by the evidence did estop plaintiff from claiming title to land beyond a boundary line established by a surveyor, though he procured or consented to such survey, and thereafter accepted a lease to the strip in controversy. p. 688.

11. NEW TRIAL.—*Newly-Discovered Evidence.*—*Cumulative Evidence.*—A new trial will not be granted on account of newly-discovered evidence, where such evidence is merely cumulative or corroborative. p. 690.

12. NEW TRIAL.—*Grounds.*—*Newly-Discovered Evidence.*—*Impeaching Evidence.*—A new trial will not be granted on .the ground of newly-discovered evidence when such evidence is merely for impeachment, or in contradiction of evidence given on trial. p. 690.

13. *New Trial.*—*Grounds.*—*Newly-Discovered Evidence.*—*Diligence.* —A party applying for a new trial on account of newly-discovered evidence must show diligence in attempting to procure such evidence before the trial. p. 690.

14. NEW TRIAL.—*Grounds.*—*Newly-Discovered Evidence.*—*Materiality.*—To warrant a new trial, newly-discovered evidence must be very material and decisive in character and such as to render it reasonably certain that another trial would bring about another result. p. 690.

15. NEW TRIAL.—*Newly-Discovered Evidence.*—*Diligence.*—*Sufficiency.*—In an action to quiet title, *held* that motion for new trial on the ground of newly-discovered evidence makes insufficient showing of diligence to procure the same before trial and that such evidence is merely cumulative. p. 690.

From Marion Superior Court (97,108); *Theophilus J. Moll,* Judge.

Action by John H. Boyer and others against William F. Scheigert and others. From a judgment for plaintiffs, the defendants appeal. *Affirmed.*

*Raymond F. Murray,* for appellants.
*Julius Shepard,* for appellees.

McMAHAN, J.—Appellees brought this action against the appellants for the possession of certain

real estate, and to quiet the title thereto. The first contention of appellants is that the court erred in overruling their demurrer to the complaint.

The complaint alleges that the appellees are owners of lot 6 in Hamlin's corrected subdivision of the Johnson heirs' addition to the city of Indianapolis in Marion county, Indiana; that appellants Scheigert and Scheigert are the owners of part of lot 5 in said subdivision, being 47.6 feet off the east end thereof; that appellants Barker and Barker are the owners of part of said lot 5, to wit, a strip forty-five feet wide and lying immediately west of and adjacent to the part owned by the Scheigerts; that said lot 5 lies immediately north of said lot 6; that the division line between said lots has been established and undisputed for more than twenty years; that said division line begins at a point forty feet north of the southwest corner of said lot 6, and runs thence east in a straight line to a point in the east line of said lot 40.82 feet north of the southeast corner of said lot 6, as shown on a plat filed with the complaint; that a fence had stood and been maintained on said division line from 1892 until September, 1914; that this fence marked the division line between said lots, and has been maintained continuously on said line for more than twenty years; that in September, 1914, the appellants removed said fence and constructed a fence south of said division line and over and upon the real estate of appellees; and on a line beginning at a point on the west line of said lot six 39.95 feet north of the southwest corner of said lot, and thence running east to a point on the east line of said lot six 39.73 feet north of the southwest corner of said lot 6; that appellees and the preceding owners of said lot 6 have

been in continuous, open, undisputed and adverse pos-
session of the real estate lying between the lines
of said old and new fences, and more particularly
described as follows: Beginning at a point 39.95 feet
north of the southwest corner of said lot; thence run-
ning east in a straight line to a point on the east line
of said lot six 39.73 feet north of the southwest corner
of said lot 6; thence north to a point 41.09 feet north
of said southeast corner of said lot 6; thence west to
a point 40 feet north of the southwest corner of said
lot 6; thence south five-hundredths of a foot to place of
beginning; that the said real estate had for many years
been used and improved up to the line on which said
old fence stood; that there is a dwelling house on said
lot 6, which has been built and standing on said lot
for many years, and which had been built up to the
division line designated by said old fence; that appel-
lees were remodeling the said house, and that it be-
came necessary for them to build a walk along the
north line of this said real estate; that by the erection
of said fence by appellants on the real estate of appel-
lees, they, appellees, were prevented from building
said walk; that appellees are entitled to the pos-
session of the real estate lying between the line of the
old fence and the line of said new fence, the same
being described by metes and bounds as above set out,
and ending with a prayer for possession and for an
order enjoining the appellants from maintaining a
fence on said strip, to quiet appellees' title thereto,
and for damages.

The appellants contend that the appellees' com-
plaint is to quiet title to land which they acquired by
adverse possession, and that it is subject to demurrer
for the reason that it does not contain specific allega-

tions of the elements necessary to constitute title by adverse possession; that the allegation in the complaint that appellees' possession was an adverse possession is a conclusion, and is too vague and indefinite.

It will be observed that the complaint in one place locates the northeast corner of the strip of land in question as being 40.82 feet north of the southeast corner of lot 6, while in that part of the complaint where the strip is described by metes and bounds the said northeast corner is located at a point 41.09 feet north of the said southeast corner. There is apparently a conflict in the two descriptions, but upon a careful examination of the complaint we are of the opinion that this seeming conflict will disappear. There was filed with the complaint a plat showing the location of the corners of the land in controversy. A reference to this plat shows that the northeast corner is 41.09 feet north of the southeast corner of lot 6, instead of 40.82 feet.

The complaint alleges that the appellees are the owners of said lot 6; that the north line of said lot for more than twenty years was marked and designated by a fence which was located on a line running east from a point forty feet north of the southwest corner of said lot 6 to a point 41.09 feet north of the southeast corner of said lot; that the line of said fence marked the line between lots 5 and 6 described in the complaint; that appellees had been in continuous, open, undisputed and adverse possession of the land up to said fence, and had built their house up to the said line; and that appellants have removed said boundary or division fence, and have erected a fence south of said division line and on the land of appel-

lees, and are claiming an interest in the strip described, and that such claim casts a cloud upon appellee's title.

If it be admitted that the allegation that the appellees' possession was an "adverse possession"

1. is a conclusion, it does not of necessity follow that the cause must be reversed for that reason.

Section 350 Burns 1914, §345 R. S. 1881, provides that: "But no objection taken by demurrer, and overruled, shall be sufficient to reverse the judgment, if it appear from the whole record that the merits of the cause have been fairly determined."

Section 407 Burns 1914, §398 R. S. 1881, is as follows: "The court must, in every stage of the action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment can be reversed or affected by reason of such error or defect."

Section 700 Burns 1914, provides: "No judgment shall be stayed or reversed, in whole or in part, by the supreme court, for any defect in form, process, * * * or other proceedings therein, which by law might be amended by the court below, but such defects shall be deemed to be amended in the supreme court; nor shall any judgment be stayed or reversed, in whole or in part, where it shall appear to the court that the merits of the cause have been fairly tried and determined by the court below."

The record shows that this cause has been fairly determined on its merits, and that the ruling on demurrer was harmless.

If the appellants thought that the allegation relative to adverse possession was too vague and indefi-

nite, they had their remedy by moving to make the complaint more specific. There was no reversible error in overruling the demurrer to the complaint. *Vulcan Iron, etc., Co.* v. *Electro, etc., Mining Co.* (1913), 54 Ind. App. 28, 99 N. E. 429, 100 N. E. 307. Section 385 Burns 1914, §376 R. S. 1881, provides that the allegations of a pleading shall be liberally construed with a view to substantial justice.

Appellants cite *McElwaine-Richards Co.* v. *Wall* (1902), 159 Ind. 557, 65 N. E. 753, to the point that the material facts necessary to constitute a cause of action must be directly averred, and that inferences or deductions cannot be resorted to where the question involved pertains to the sufficiency of the pleadings. Counsel doubtless overlooked the fact that this case has been overruled by the more recent case of *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99, where the court used the following apt language: "Appellant makes no claim that it was misled or deprived of making a complete defense to the action because of any defect in the complaint, and if this judgment be reversed because of the court's ruling on demurrer, the only substantial result attained thereby, would be the instruction received by appellee's counsel in the science of pleading. However desirable it may be to the courts to secure pleadings scientifically accurate, we are not warranted in reversing judgments solely for such reason."

The appellant filed an answer and also a cross-complaint, in which they allege that they are the owners of certain parts of lot 5, and that the appel-

lees are the owners of said lot 6; that appellees have erected their dwelling house so that the north side of said house extends about six inches north of the north line of said lot 6 and over on the part of said lot 5 owned by the appellants, and ask that their title to said lot 5 be quieted against the appellees, and that the appellees be required to move their house from lot 5, and for all other proper relief.

The cause was tried by a jury, and resulted in a verdict for appellees upon their complaint, and also upon the cross-complaint. In connection with their general verdict, the jury answered certain interrogatories which were submitted to them.

The appellants contend that the court erred in not rendering judgment in their favor on the interrogatories and the jury's answers thereto. The appellants insist that the answer of the jury to interrogatory No. 7 shows conclusively that a Mr. Mueller, from whom appellees purchased lot 6 in 1904, did not, while he owned the lot, intend to claim title to any part of lot 5, and that such intention is necessary in order to establish title by adverse possession.

Said interrogatory, and the answer of the jury thereto, are as follows: "7. Was it the intention of J. Henry Mueller, the owner of lot six (6) immediately prior to the time said lot was purchased by the plaintiffs, to claim title to any part of lot five (5), the lot now owned in part by these defendants?" Answer, "No."

It is not necessary for us to determine what effect, if any, the answer to this interrogatory would have upon the general verdict, for the reason that the jury, in answer to interrogatories Nos. 8 and 9, stated that J. Henry Mueller, during

the time he was the owner of lot 6, claimed that he was the owner of and entitled to possession of part of lot 5. If it is argued that the answer to interrogatory No. 7 is in conflict with the general verdict, the answer is that the answers to interrogatories Nos. 8 and 9 are inconsistent with the answer to No. 7. Where the answers of the jury are inconsistent, they antagonize and destroy each other, and cannot control the general verdict. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 78 N. E. 1033.

Is the answer to interrogatory No. 7 necessarily in conflict with, and irreconcilable with, the general verdict? We do not believe that it is. This interrogatory is somewhat involved, and when considered in connection with Nos. 8 and 9, and the answers thereto, the jury doubtless intended, when they answered No. 7, to say that Mr. Mueller did not intend to claim title to any part of lot 5 owned by appellants at the time of the trial. When the jury answered interrogatories Nos. 7, 8 and 9, they doubtless did so on the theory that the appellees were at that time the owners of part of lot No. 5, by reason of adverse possession, and that Mr. Mueller while he was the owner of lot 6 claimed to be the owner of the part which they, by their general verdict, found was owned by the appellees. With this construction placed upon their answers, the apparent conflict and inconsistencies between the general verdict and the special findings disappear, and the answers to interrogatories Nos. 7, 8 and 9 harmonize with each other and with the general verdict.

There was no error in overruling the motion for judgment on the answers to the interrogatories.

The appellants filed a motion for a new trial for the

reasons: (1) That the court erred in submitting the cause to a jury; (2) the damages are excessive; (3) the verdict of the jury is not sustained by sufficient evidence; (4) the verdict of the jury is not sustained by sufficient evidence, and is against the clear preponderance of the evidence; and (5) for newly-discovered evidence. All other reasons assigned as grounds for a new trial are waived.

The appellants do not claim that a request was made for a trial by the court, or that they made any objection to the case being submitted to a jury for trial. If appellants thought the issues should have been tried by the court, they should have objected at the time the cause was submitted to the jury, instead of waiting until a verdict against them was returned. *Sheets* v. *Bray* (1890), 125 Ind. 33, 24 N. E. 357.

The next claim is that the damages are excessive. Appellants' counsel say that there is some evidence indicating a purpose to prove a reduction in the rental value of the property, but that the pleadings are insufficient to warrant a recovery of such damage. The complaint alleges that the appellees were remodeling the dwelling house on the lot owned by them by converting it into an apartment house; that in so doing it became necessary to make an entrance on the north side of the house, leading into the north side and into the basement; that it was necessary to build a walk from the sidewalk to said entrance and along the north side of the house between the house and the north line of appellees' lot; that, by reason of the erection and construction of the fence by appellants, appellees were prevented from building said walk, and are prevented the free

use of said entrance, and that they are damaged, etc.

These allegations are sufficient to authorize the recovery of damages for diminution of the rental value of the property.    The difference in the

7.   rental value occasioned by such obstructions is the rule usually adopted in such cases, though, under proper circumstances, the recovery may take a wider scope. *Muncie Pulp Co.* v. *Keesling* (1906), 166 Ind. 479, 76 N. E. 1002; 9 Ann. Cas. 530; *Jackson* v. *Kiel* (1889), 13 Colo. 378, 22 Pac. 504, 6 L. R. A. 254, 16 Am. St. 207.

There is evidence showing the rental value of one apartment decreased from $30 a month to $25, and that the rent of the north apartment was reduced from $20 a month to $17 on account of the passageway on the north side being too narrow for the iceman to enter that way.   The damages cannot be said to be excessive.

The third and fourth reasons assigned for a new trial relate to the sufficiency of the evidence, and will be considered together.

Lots 5 and 6 described in the complaint are forty feet wide, north and south, fronting east on Ruckle street, and extending west 135 feet. The land involved in this appeal is 1.36 feet wide on Ruckle street and runs to the west line of said lots where it is only six-tenths of an inch wide.   The undisputed evidence is that one Henry Mueller and wife purchased lot 6 in the spring of 1892, at which time there were no improvements or buildings on either of said lots.   The Muellers erected a house on lot 6 in the spring of 1892, and in the fall of that year constructed a fence north of the house, beginning at the west line of the lot and extending east in a straight line to a point about

twenty-five feet west of Ruckle street. The Muellers lived in said house until 1904, when they sold to the appellees, who have lived there continuously since they became the owners of lot 6. The fence erected by the Muellers was a board fence, the boards being nailed on the north side of the posts. At the west end the north side of the fence was, for all practical purposes, on the division line between said lots, while the east end, if it had been extended to the east line of said lot, would have been about 1.09 feet north of said division line. This fence was still standing when the appellees purchased lot 6 in 1904, although it was in very poor condition. Nails were rusted, boards were rotten and some of them had fallen off, and stakes had been driven on the side of some of the posts to keep them from falling. The boards west of the house were all torn off the fence in 1907 or 1908, the posts being allowed to remain. Some of the posts west of appellees' house were removed and iron posts put in their place and wire fastened to them.

About the year 1906, appellees built a bathroom at the northwest corner of their house, which extended about seven feet west of the old house and two feet north. The north line of the bathroom was almost if not as far north as the north side of the old fence, some of the old fence posts being removed so as not to be in the way. The appellants Scheigerts purchased the east part of lot 5 in the fall of 1909, prior to which time there were no improvements of any kind on lot 5. The Scheigerts, in the fall and winter of 1909, erected a house on the part purchased by them, and moved into it in the spring of 1910. The Barkers purchased part of lot 5, east of the Scheigert lot, in November, 1912. In 1914 the appellees remod-

eled their house and made it into three apartments. The appellees, while so remodeling their house, cut a door in the north side of the house, east of the bathroom. They also made an entrance into the cellar between that door and the bathroom, and had begun to excavate the ground, intending to put in a two-foot concrete walk extending east from the cellar door to the sidewalk on Ruckle street. The distance between the main part of the house and the north side of the fence was twenty-four inches. At this time, September, 1914, and before appellees got the walk built, appellants caused the remainder of the old fence posts and the wire fence west of the bathroom to be removed, and erected a new board fence. This new fence was, for all practical purposes, at the west end on the line of the old one. It ran east to the bathroom, where the south side of the posts was about eight inches south of the north line of the bathroom. This fence was also erected from the bathroom east a distance of about twenty feet, the south side of the fence being sixteen inches from the north side of the main part of the house, and being where the appellees started to build the said concrete walk. The boards of this new fence, both east and west of the bathroom, were on the south side of the posts. The evidence is conflicting as to the location of the new fence in relation to the old fence. Some of the witnesses testified that the new fence was erected on the same line as the old one; some testified that it was south of the old one. There is no conflict concerning the fact that the boards of the old fence were attached to the north side of the posts, or that, when the new fence was built, the boards were fastened to the south side of the posts. Ten or twelve witnesses testified as to the

location of the two fences, and the occupancy of the land up to the line of the old fence by appellees and their immediate grantors for more than twenty years before this action was commenced.

The jury, in answering the interrogatories, find that the new fence was six inches south of the old fence, and that no part of appellees' bathroom is on the lands of appellants. The occupation and possession by appellees and their grantors was open, notorious, and visible; it was exclusive, continuous and uninterrupted for more than twenty years, and under the evidence the jury was justified in finding that it was hostile and under claim of ownership sufficient to establish title by adverse possession.

As the Supreme Court said, in *Rosenmeier* v. *Mahrenholz* (1913), 179 Ind. 467, 473, 101 N. E. 721: "It has been decided many times in this state that the location of a division boundary fence, acquiesced in and acted upon, and the premises improved and kept up to the line by each owner for twenty years becomes the true boundary line."

The evidence discloses that in September, 1914, when the appellees were remodeling their house, a question arose as to the line between the land owned by appellants and appellees; that a surveyor was called to make a survey of lots 5 and 6; that, according to this survey, appellees' bathroom extended eight inches north of the true division line between lots 5 and 6; that after this survey there was some talk between appellee John H. Boyer and appellant Orman Barker relative to leasing that part of the Barker lot occupied by appellees' bathroom, and that Mr. Barker drafted or caused to be drafted a

statement to the effect that he leased said strip of land to the appellees; that the appellee John H. Boyer in writing accepted such lease; that appellants thereafter erected a fence, as they claim, two inches north of the boundary line, as located by the survey.

Appellants contend that, since appellees procured or consented to such survey, and after appellee John Boyer accepted said lease, appellees are now estopped from claiming title to any land north of the line established by such survey. Another surveyor was employed by appellees in November, 1914, to survey lot 6, and he located the northeast corner of lot six twenty-seven-hundredths of a foot north of the point where the former surveyor located it.

There was evidence to the effect that the east part of the fence was south of the line between said lots, and the jury, by their verdict, found that the fence was south of this line. The evidence does not create such a state of facts as to estop the appellees. *Grimm* v. *Johns* (1916), 61 Ind. App. 514, 112 N. E. 13; *Rosenmeier* v. *Mahrenholz, supra; Wood* v. *Kuper* (1898), 150 Ind. 622, 50 N. E. 755; *Fuelling* v. *Fuesse* (1909), 43 Ind. App. 441, 87 N. E. 700.

The appellants also contend that the court should have sustained their motion for a new trial on account of newly-discovered evidence to which they say one Oliver P. McLeland would testify. The affidavit of the appellants in support of their motion is to the effect that Mr. McLeland would testify that he was employed to make some repairs on appellees' house in September, 1914, and while he was doing such work the appellee John Boyer instructed him to make some measurements and to locate the north line of said lot 6; that he did so, and drove a stake at that point,

which was about two feet north of the bathroom; that appellees instructed witness to call the appellants and tell them that the stake was at the north line of appellees' property, and that Mr. Boyer claimed that to be the north line of his property.

In considering a motion for a new trial on account of newly-discovered evidence, we should keep in mind: (1) That a new trial will not be granted on account of newly-discovered evidence where such evidence is merely cumulative or corroborative; (2) that a new trial will not be granted when such evidence is merely for impeachment, or in contradiction of evidence given on the trial; (3) that the party applying for a new trial on account of newly-discovered evidence must show diligence in attempting to procure such evidence before the trial; and, (4) that such evidence must be very material and decisive in character, and such as to render it reasonably certain that another trial would bring about a different result. *Franklin* v. *Lee* (1902), 30 Ind. App. 31, 62 N. E. 78.

Applications of this kind are received with distrust and disfavor, and ought to be received with great caution. *Donahue* v. *State* (1905), 165 Ind. 148, 7 N. E. 600.

The appellants have made no showing of diligence. No facts are set out showing why this evidence could not have been discovered before the trial. The action had been pending about eighteen months before it was tried. The appellants might have known that the witness had made the measurements; may have seen him at work at the time he made them. For all that appears in the motion, the witness may have been a neighbor of the appellant. In fact, the

appellants in their brief say that the witness by his testimony will prove "that Mrs. Francis G. Boyer was present when the conversations between Orman Barker, William F. Scheigert and John H. Boyer occurred, concerning the location of the boundary line between lots 5 and 6, and the agreement to employ a surveyor to locate the true line." If this is true, appellants, by the exercise of ordinary diligence, could have discovered all the facts to which they now claim the witness would testify.

The appellant Alice Scheigert testified that: "Boyer's carpenter came and called us to see where the line was; a stake had been driven in the ground a foot north of the north side of Boyer's bathroom." If appellants had used diligence, they might have learned that Mr. McLeland and the carpenter were one and the same person.

Not only do appellants fail to show diligence, but the alleged new evidence is cumulative, and is not of such a character as would likely produce a different result if a new trial were granted. There was no error in overruling the motion for a new trial.

Judgment affirmed.

Dausman, C. J., not participating.